UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————— x

XIAOMENG LIAN, Individually and on :    Civil Action No.    1:22-cv-6792
Behalf of All Others Similarly Situated, :
                               :    <u>CLASS ACTION</u>
               Plaintiff, :
                                 :    COMPLAINT FOR VIOLATIONS OF THE
       vs.                           :    SECURITIES ACT OF 1933
                                 :
TUYA INC., XUEJI (JERRY) WANG, :
LIAOHAN (LEO) CHEN, YI (ALEX) YANG, :
YAO (JESSIE) LIU, SCOTT SANDELL, :
CARMEN CHANG, JEFF IMMELT, QING :
GAO, JING HONG, MORGAN STANLEY & :
CO. LLC, BofA SECURITIES, INC., CHINA :
INTERNATIONAL CAPITAL :
CORPORATION HONG KONG :
SECURITIES LIMITED, TIGER BROKERS :
(NZ) LIMITED, and CMB :
INTERNATIONAL CAPITAL LIMITED, :
                                 :
              Defendants. :
                                 :

————————————————————— x   <u>DEMAND FOR JURY TRIAL</u>

Plaintiff Xiaomeng Lian ("plaintiff"), individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Tuya Inc. ("Tuya" or the "Company"), the Company's press releases, and analyst reports, media reports, and other publicly disclosed reports and information about the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all persons or entities who purchased Tuya American Depositary Shares ("ADSs") in or traceable to the Company's March 2021 initial public offering (the "IPO") seeking to pursue remedies under the Securities Act of 1933 (the "1933 Act").

## JURISDICTION AND VENUE

2.      The claims alleged herein arise under §§11 and 15 of the 1933 Act, 15 U.S.C. §§77k and 77o.  This Court has jurisdiction over the subject matter of this action pursuant to §22 of the 1933 Act, 15 U.S.C. §77v.

3.      This Court has personal jurisdiction over each of defendants and venue is proper in this District.  Defendants conducted the IPO in this District, disseminated the Registration Statement (defined herein) into this District, and solicited purchasers of Tuya ADSs in this District.  The Tuya ADSs issued in the IPO also trade in this District.

## PARTIES

4.       Plaintiff Xiaomeng Lian, as set forth in the certification attached hereto and incorporated by reference herein, purchased Tuya ADSs traceable to the IPO and has been damaged thereby.

5.       Defendant Tuya, incorporated in the Cayman Islands and headquartered in Zhejiang Province, China, developed and offers a purpose-built "Internet of Things" ("IoTs") cloud platform that delivers a suite of offerings, including Platform-as-a-Service, or PaaS, and Software-as-a-Service, or SaaS, to businesses and developers.  Tuya ADSs trade in New York on the New York Stock Exchange ("NYSE") under ticker symbol "TUYA."  Each Tuya ADS represents one Class A ordinary share of the Company.

6.       Defendant Xueji (Jerry) Wang ("Wang") co-founded Tuya and served as Tuya's Chief Executive Officer and a director of the Company at the time of the IPO.  Defendant Wang, along with defendant Liaohan (Leo) Chen, beneficially owned all of Tuya's Class B ordinary shares and collectively controlled 83.7% of the total voting power of Tuya's voting shares immediately following the completion of the IPO (reduced to the extent the underwriters exercised their option to purchase additional ADSs).

7.       Defendant Liaohan (Leo) Chen ("Chen") co-founded Tuya and served as President and a director of the Company at the time of the IPO.

8.       Defendant Yi (Alex) Yang ("Yang") co-founded Tuya and served as Chief Operation Officer and a director of the Company at the time of the IPO.

9.       Defendant Yao (Jessie) Liu ("Liu") served as Tuya's Chief Financial Officer, Senior Vice President, and a director of the Company at the time of the IPO.

10.      Defendant Scott Sandell ("Sandell") served as a director of Tuya at the time of the IPO.

11.     Defendant Carmen Chang ("Chang") served as a director of Tuya at the time of the IPO.

12.     Defendant Jeff Immelt ("Immelt") served as a director of Tuya at the time of the IPO.

13.     Defendant Qing Gao ("Gao") served as a director of Tuya at the time of the IPO.

14.     Defendant Jing Hong served as a director of Tuya at the time of the IPO.

15.     The defendants identified in ¶¶6-14 are referred to herein as the "Individual Defendants."  Each of the Individual Defendants signed the Registration Statement, other than defendants Immelt and Gao who were named as directors of the Company with their consent in the Registration Statement.  In addition, the Individual Defendants participated in the solicitation and sale of Tuya ADSs to investors in the IPO for their own benefit and the benefit of Tuya as directors, executive officers, and/or major shareholders of the Company.

16.     Defendants Morgan Stanley & Co. LLC, BofA Securities, Inc., China International Capital Corporation Hong Kong Securities Limited, Tiger Brokers (NZ) Limited, and CMB International Capital Limited served as underwriters for the IPO and are referred to herein as the "Underwriter Defendants."  Pursuant to the 1933 Act, the Underwriter Defendants are liable for the materially false and misleading statements in the Registration Statement as follows:

(a)     The Underwriter Defendants are investment banking houses that specialize in, *inter alia*, underwriting public offerings of securities.  They served as the underwriters of the IPO and shared over $37 million in fees collectively for their services.  The Underwriter Defendants determined that in return for their share of the IPO proceeds, they were willing to solicit purchases of Tuya ADSs in the IPO.  Each of the Underwriter Defendants designated personnel to the IPO working group, including investment bankers, analysts, associates, and counsel, to market Tuya

ADSs, and those personnel worked on and approved the content of Tuya's Registration Statement and other offering materials.

(b)     The Underwriter Defendants demanded and obtained an agreement from Tuya that Tuya would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws.

(c)     Representatives of the Underwriter Defendants also assisted Tuya and the Individual Defendants in planning the IPO and purportedly conducted an adequate and reasonable investigation into the business and operations of Tuya, an undertaking known as a "due diligence" investigation.  The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO.  During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning Tuya's operations and financial prospects.

(d)     The Underwriter Defendants solicited and sold in the IPO Tuya ADSs to plaintiff and other members of the Class (defined below).  The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

## SUBSTANTIVE ALLEGATIONS

17.     Based in China, Tuya built and offers an IoT cloud platform that delivers offerings that include Platform-as-a-Service ("PaaS") and Software-as-a-Service ("SaaS") to businesses and developers.  The Company's proprietary products and services enable so-called "smart devices," *e.g.*, household items and appliances connected to the internet, to communicate and interact with end users and online information and services.

18.     The Company was founded in 2014 by defendants Wang, Chen, and Yang.  By 2020, Tuya had over 5,000 customers, primarily including brands, original equipment manufacturers

("OEMs"), industry operators, and system integrators.  The Company primarily develops and maintains the "smart" software upon which smart devices manufactured and sold by third parties are based.  Thus, the Company depends heavily on the ability of its product partners to be able to effectively market and sell their products.

19.     Approximately 20% of Tuya's customers sell products online through e-commerce marketplaces such as Amazon.com.  In order to maintain the integrity of its platform, Amazon.com has long prohibited the practice of sellers compensating review writers for their reviews in most instances. Despite this prohibition, in April 2019 the consumer website *Which?* published a report claiming that the website had been "flooded by fake five-star reviews."  According to *Which?*, sellers were listing products that carried tens of thousands of unverified reviews – meaning that there was no evidence that the people leaving the reviews had actually bought the product on Amazon.com or elsewhere. The report found that in some categories of products 90% of reviews were unverified.

20.     In August 2020, researchers at the University of California, Los Angeles, Sherry He and Brett Hollenbeck, together with Davide Proserpio from the Marshall School of Business, University of Southern California, posted a research paper that analyzed the market for fake reviewed products on Amazon.com entitled "The Market for Fake Reviews."  The paper found that "the vast majority" (84%) of sellers benefitting from fake reviews were located in China.

21.     In September 2020, the *Financial Times* published an article entitled "Amazon deletes 20,000 reviews after evidence of profits for posts."  The article stated that Amazon had deleted approximately 20,000 product reviews, written by 7 of its top 10 U.K. reviewers, following a *Financial Times* investigation into suspicious activity.  The article stated that, "[o]verwhelmingly,

those products were from little-known Chinese brands, who often offer to send reviewers products for free in return for positive posts."

22.     In February 2021, *Which?* published a follow-up report finding that a "thriving" fake review industry continued to proliferate on Amazon.com.

23.     On March 1, 2021, a data security organization, Safety Detectives, obtained access to a data server located in China that contained 7GB of data and over 13 million records appearing to be linked to a widespread fake review scam.

24.     Leading up to the IPO, Tuya claimed to be experiencing phenomenal growth.  In 2020, the Company claimed that its technology powered over 116.5 million smart devices in more than 1,100 product categories sold in over 220 countries and regions globally.  Tuya claimed to be the "largest IoT PaaS business in the global market of IoT PaaS in terms of the volume of smart devices powered" and stated that its "business ha[d] scaled rapidly in recent periods," growing revenue by 70% year-over-year to $179.9 million in 2020.

25.     On February 26, 2021, Tuya filed with the SEC a registration statement on Form F-1 for the IPO, which, after amendments on March 12, 2021 and March 16, 2021, was declared effective on March 17, 2021 (the "Registration Statement").  On March 19, 2021, the Company filed with the SEC a prospectus for the IPO on Form 424B4, which incorporated and formed part of the Registration Statement.  The Registration Statement was used to sell to the investing public over 45 million Tuya ADSs at $21 per ADS (which included a partial exercise of the Underwriter Defendants' over-allotment option), generating over $946 million in gross offering proceeds.

26.     Unbeknownst to investors, a material portion of Tuya's China-based customers were engaged in widespread illicit activities to misleadingly promote and sell their products on e-commerce marketplaces, most notably Amazon.com.  Many of Tuya's most significant customers

were engaged in the systematic practice of writing fake reviews and paying for positive reviews, in direct violation of Amazon.com's seller policies and practices. The ratings manipulation by a large contingent of Tuya's customer base posed a significant undisclosed risk that Amazon.com would terminate or limit the sale of products containing Tuya's technology on its platform, thereby materially negatively impacting the Company's financial results. Increasing the likelihood of this adverse event transpiring, prior to the IPO, investigations had uncovered that many Chinese-based sellers – although without any apparent or reported links to Tuya – were engaged in the mass manipulation of product reviews on Amazon.com. Furthermore, on March 1, 2021, more than two weeks before the IPO, a data security organization, Safety Detectives, had recovered a database that exposed 13 million records of organized fake review scams linked to over 200,000 Amazon account profiles, many of which implicated Tuya's clients.

## MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS IN THE REGISTRATION STATEMENT

27. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make adequate disclosures required under the rules and regulations governing the preparation of such documents.

28. Specifically, the Registration Statement stated that Tuya had "established a thriving ecosystem of brands, OEMs, developers, partners and end users on our platform due to powerful network effects." The Registration Statement stated that this vibrant ecosystem included: (i) a "[l]arge and loyal global customer base" with "over 5,000 customers in 2020"; (ii) a "[v]ibrant developer and partner network" with "over 262,000 IoT device and software developers"; and (iii) an "[e]xpansive end user base" which "powered over 116.5 million smart devices."

- 7 -

29.     The Registration Statement represented that the Company was experiencing tremendous growth in the leadup to the IPO.  For example, the Registration Statement stated: "Our business has scaled rapidly in recent periods."  The Registration Statement continued: "For 2020, our revenue grew to US$179.9 million, representing an increase of 70% over the same period in 2019."  The Registration Statement similarly stated that "[w]e help our customers succeed and we benefit from their growth" and claimed that Tuya's "dollar-based net expansion rate of IoT PaaS was 181% for the trailing 12-month period ended December 31, 2020, indicating strong growth within our existing customer base."

30.     In addition, the Registration Statement asserted that Tuya "ha[s] amassed a large and diversified customer base covering a wide spectrum of verticals" with "significant growth opportunities within our existing customers."  The Registration Statement further stated that the Company's "brand awareness also increases" over time, "generating word-of-mouth referrals that not only attract more brands, developers and partners, but also lead to growing end user demand, better user insights and a more vibrant IoT ecosystem."  The Registration Statement added that the Company "expect[s] to expand into additional product categories and use cases to expand cross- and up-selling opportunities" and "that these efforts will have a long-term, positive impact on our business and results of operations."

31.     The Registration Statement represented that this exceptional growth was continuing at the time of the IPO and expected to continue following the offering.  For example, the Registration Statement stated that "overall IoT PaaS market" was projected "to grow at a CAGR of 18.9% from 2019 to 2024 to reach US$171.7 billion, out of which US$57.9 billion is attributable to smart home and smart business, and US$113.8 billion is attributable to smart industries."  The Registration

Statement also stated that "China accounts for US$18.9 billion and US$49.7 billion of the overall IoT PaaS market in 2019 and 2024, respectively, representing a CAGR of 21.3%."

32.     The Registration Statement stated that Tuya was the dominant player in this rapidly expanding market, stating that the Company was "the leading IoT cloud platform based on [its] leading position in the global market of IoT PaaS."  The Registration Statement stated that Tuya was poised to further increase its already dominant market position through a variety of "growth strategies," stating that the Company would: (i) "extend our technology leadership" by investing in research and innovation; (ii) "deepen our relationship with existing customers" by helping them increase sales volume of products powered by Tuya; (iii) "acquire new customers"; (iv) "broaden our reach by expanding into new verticals such as industrial and agriculture"; (v) "grow and broaden our SaaS offerings"; and (vi) "expand brand awareness."   The Registration Statement likewise stated: "We are intensely focused on growing our customer base" and "committed to delivering industry-leading products to continue building and maintaining credibility with the global IoT community."

33.     Moreover, the Registration Statement represented that the Company's "growth strategies" were "tailored around [Tuya's] customers and their specific demands."  The Registration Statement claimed that Tuya had "significant growth opportunities within [its] existing customers," such as by "[t]hrough the increase usage" of existing customers, "grow[ing] more brands and OEMs on our platform into large customers," and "expand[ing] cross- and up-selling opportunities" in order to "achieve additional revenue growth from existing customers."  The Registration Statement stated that these efforts were expected to "have a long-term, positive impact on [Tuya's] business and results of operations."

34.     These statements in ¶¶28-33 were materially false and misleading when made because they failed to disclose the following adverse facts that existed at the time of the IPO:

(a)     that a material portion of Tuya's China-based customers were engaged in the widespread and systematic manipulation of reviews and product offerings in violation of Amazon.com's terms of use;

(b)     that, prior to the IPO, a consumer investigation and data breach had exposed an illicit fake review scheme being perpetrated by many of Tuya's clients, among others, which included, *inter alia*, the exposure of 13 million records of organized fake review scams linked to over 200,000 Amazon account profiles;

(c)     that, as a result of (a)-(b) above, there was a substantial risk that a material portion of Tuya's significant customers would be barred from using Amazon.com's platform, negatively impacting Tuya's business, revenue, earnings, and prospects; and

(d)     that, as a result of (a)-(c) above, the Registration Statement's representations regarding Tuya's historical financial and operational metrics and purported market opportunities and expected growth did not accurately reflect the actual business, operations, financial results, and trajectory of the Company at the time of the IPO, and such statements were materially false and misleading and lacked a reasonable factual basis.

35.     Furthermore, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303(b)(2)(ii) ("Item 303"), required defendants to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."   Similarly, Item 105 of SEC Regulation S-K, 17 C.F.R. §229.105 ("Item 105"), required, in the "Risk Factors" section of registration statements and

prospectuses, "a discussion of the material factors that make an investment in the registrant or offering speculative or risky" and required each risk factor to "adequately describe[] the risk."

36.     The failure of the Registration Statement to disclose that a material portion of Tuya's China-based customers were engaged in a widespread fake review scheme and that such scheme had been exposed prior to the IPO violated Item 303, because these undisclosed facts were known to defendants and would (and did) have an unfavorable impact on the Company's net sales, revenues, and income from continuing operations and rendered the historical information provided in the Registration Statement not indicative of the actual operating results or financial condition of Tuya at the time of the IPO.   This failure also violated Item 105, because these adverse facts created significant risks that were not disclosed even though they were some of the most significant factors that made an investment in Tuya ADSs speculative or risky.

37.     Indeed, the risk factors that were provided in the Registration Statement were themselves materially misleading because they provided generic statements of potential or contingent risk, yet failed to disclose that the potential future adverse impacts described therein were already occurring.   For example, the Registration Statement stated that "[t]he success of our business is dependent upon our ability to maintain and expand our customer base" and "[i]f our customers do not increase their use of our products and services, our revenue *may* not grow and our results of operations *may* be harmed."   However, the Registration Statement failed to disclose that a material portion of Tuya's customers were *already* engaged in a massive scheme to manipulate reviews on Amazon.com in direct violation of that platform's policies and procedures, creating an acute risk that their sales would be barred from the platform.   The Registration Statement's omission of adverse facts then facing the Company rendered the purported risk discussions contained therein themselves materially false and misleading.

## EVENTS FOLLOWING THE IPO

38.     On May 11, 2021, an article on techcrunch.com revealed that over the past few days, "several top Chinese sellers disappeared from Amazon."  The report stated that over 13.1 million records documenting a massive fake review scam had been uncovered, with more than 200,000 Amazon accounts.  The article added that "[i]n total, the suspended accounts contribute over a billion dollars in gross merchandise value (GMV) to Amazon."  The article quoted Amazon as stating: "'We take swift action against those that violate [our policies], including suspending or removing selling privileges.'"

39.     On July 9, 2021, verdict.co.uk reported that Amazon had "closed 340 online stores of one of its largest Chinese retailers in the first half of this year" as it cracked down against paid reviews and other violations of Amazon's terms of use.  In subsequent weeks, Amazon banned hundreds of Chinese brands across thousands of sellers' accounts, many of which were clients of Tuya.  Amazon stated that these sellers knowingly, repeatedly, and significantly violated Amazon's seller policies, especially the ones around review abuse.

40.     Then, on August 18, 2021, Tuya issued a press release announcing the Company's financial results for the second quarter of 2021.  The release also provided the outlook for the third quarter of 2021, stating that the Company expects revenue to be in a range of just $83 million to $86 million, which surprised and disappointed analysts and investors.

41.     During an earnings call held that same day with analysts and investors, defendant Liu revealed the reason for the low third quarter revenue forecast, explaining that "our customers face a series of challenges, including Amazon's strict execution of seller policy," in which Amazon had banned cross-border e-commerce stores.  After the call, analysts estimated that the Amazon bans would negatively affect Tuya's 2021 second half revenues by 10%, and that 20% of all Tuya IoT-enabled devices were sold through online channels such as Amazon.

42.     By August 2022, Tuya ADSs had dropped below $2 per ADS – 90% below the price at which Tuya ADSs were sold to the investing public in the IPO.  At the time of the filing of this complaint, the price of Tuya ADSs has remained significantly below the IPO price.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action as a class action on behalf of all persons or entities who purchased Tuya ADSs in or traceable the IPO (the "Class").  Excluded from the Class are defendants and their families, the officers, directors, and affiliates of defendants, at all relevant times, and members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable.  Tuya ADSs are actively traded on the NYSE and millions of ADSs were sold in the IPO.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Tuya or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions, including being given an opportunity to exclude themselves from the Class.

45.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law as complained of herein.

46.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether defendants violated the 1933 Act;

(b)     whether statements made by defendants to the investing public in the Registration Statement misrepresented material facts about the business, operations, and risks of investing in Tuya; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

48.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violation of §11 of the 1933 Act
### Against All Defendants

49.     Plaintiff repeats and realleges ¶¶1-48 by reference.

50.     This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

51.     This Count does not sound in fraud.  Plaintiff does not allege that any of the defendants had scienter or fraudulent intent, which are not elements of a §11 claim.

52.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

53.     The defendants named herein were responsible for the contents and dissemination of the Registration Statement as signatories and/or directors of the Company or as the underwriters of the IPO.

54.     Tuya is the registrant for the IPO.  As the issuer of the shares, Tuya is strictly liable to plaintiff and the Class for the misstatements and omissions.

55.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

56.     By reason of the conduct alleged herein, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

57.     Plaintiff purchased Tuya ADSs registered pursuant to the Registration Statement and traceable to the IPO.

58.     Plaintiff and the Class have sustained damages.  The value of Tuya ADSs has declined substantially subsequent to and due to defendants' violations.

59.     At the time of their purchases of Tuya ADSs, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein.  Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this complaint.  Less than three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this complaint.

## COUNT II

### For Violation of §15 of the 1933 Act
### Against Tuya and the Individual Defendants

60.     Plaintiff repeats and realleges ¶¶1-59 by reference.

61.     This Count is brought pursuant to §15 of the 1933 Act, 15 U.S.C. §77o, against Tuya and the Individual Defendants.

62.     The Individual Defendants controlled Tuya at the time of the IPO by virtue of their dominant voting power and status as the Company's controlling shareholders, directors, and/or senior officers.  The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Tuya.

63.     Defendant Tuya controlled the Individual Defendants and all of its employees.

64.     The defendants named herein each were culpable participants in the violations of §11 of the 1933 Act alleged in the Count above, based on their participation in the Company's reporting on financial and operational results to investors, having signed or authorized the signing of the Registration Statement, selling Tuya ADSs in the IPO, and/or having otherwise participated in the process that allowed the IPO to be successfully completed.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Awarding such equitable/injunctive or other relief as the Court may deem just and proper, including permitting any putative Class members to exclude themselves by requesting exclusion through noticed procedures.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED:  August 9, 2022                    ROBBINS GELLER RUDMAN
                                                             & DOWD LLP
                                                          SAMUEL H. RUDMAN
                                                          VICKI MULTER DIAMOND


                                                              *s/ Samuel H. Rudman*
                                                          SAMUEL H. RUDMAN

                                                          58 South Service Road, Suite 200
                                                          Melville, NY  11747
                                                          Telephone:  631/367-7100
                                                          631/367-1173 (fax)
                                                          srudman@rgrdlaw.com
                                                          vdiamond@rgrdlaw.com

                                                          ROBBINS GELLER RUDMAN
                                                             & DOWD LLP
                                                          BRIAN E. COCHRAN
                                                          200 South Wacker Drive, 31st Floor
                                                          Chicago, IL  60606
                                                          Telephone:  312/674-4674
                                                          312/674-4676 (fax)
                                                          bcochran@rgrdlaw.com

JOHNSON FISTEL, LLP
RALPH M. STONE
1700 Broadway, 41st Floor
New York, NY  10019
Telephone:  212/292-5690
212/292-5680 (fax)
ralphs@johnsonfistel.com

Attorneys for Plaintiff

DocuSign Envelope ID: 8C546876-6544-417B-B858-DB2891BD85AF

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

Xiaomeng Lian ("Plaintiff") declares:

1.      Plaintiff has reviewed a complaint and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:  *See* attached Schedule A.

5.      Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:  None.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on  7/10/2022        .

DocuSigned by:

*Xiaomeng Lian*

ADA25ED7D27746E...

Xiaomeng Lian

<u>Schedule A</u>

Xiaomeng Lian
Tuya Inc. (TUYA)

| Date Acquired | Amount of Shares Acquired | Price |
|---|---|---|
| 4/14/2021 | 500 | $17.60 |
| 5/7/2021 | 500 | $17.45 |
| 8/17/2021 | 500 | $15.55 |

| Date Sold | Amount of Shares Sold | Price |
|---|---|---|
| 5/18/2021 | 400 | $21.23 |