UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
                                                                       :
XIAOMENG LIAN, *individually and on behalf of all*                     :
*others similarly situated*,                                           :
                                                                       :
                                    Plaintiff,                         :          22 Civ. 6792 (JPC)
                                                                       :
            -v-                                                        :          <u>ORDER</u>
                                                                       :
TUYA INC., *et al.*,                                                   :
                                                                       :
                                    Defendants.                        :
                                                                       :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      The Complaint in this putative class action alleges that a publicly traded corporation, Tuya,

Inc. ("Tuya"), nine of its executives, and its initial public offering ("IPO") underwriters violated

the Securities Act of 1933 by filing a registration statement in connection with a March 2021 IPO

of American Depository Shares ("ADSs") that contained materially false and misleading statements

and omissions.  Dkt. 1 ("Complaint") ¶¶ 1, 35, 49-64.  On August 9, 2022, the same date the

Complaint was filed, the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller")

disseminated a press release through Business Wire, announcing that the action had been

commenced and describing the allegations.  Dkt. 33-3.  As explained in the press release, any

member of the purported class could have moved the Court for appointment as lead plaintiff by

October 11, 2022.  *Id.*; *see* 15 U.S.C. § 77z-1(a)(3)(A)(i)(II).  Three motions were timely filed.  One

motion sought the appointment of Jeronimo Ortiz as lead plaintiff and Levi & Korsinsky, LLP as

lead counsel (the "Ortiz Motion").  Dkt. 23.  The second motion sought the appointment of Mi

Yuanshan as lead plaintiff and Pomerantz LLP as lead counsel (the "Yuanshan Motion").  Dkt. 27.

The third motion sought the appointment of Kyle Nelson and Jiyi Qiu as lead plaintiff and Robbins

Geller and Glancy Prongay & Murray LLP as lead counsel (the "Nelson and Qiu Motion").  Dkt.

30.  Ortiz subsequently filed a notice of non-opposition to the other two motions.  Dkt. 35.  For the reasons that follow, the Court grants the Nelson and Qiu Motion, and denies the Ortiz Motion and the Yuanshan Motion.[1]

The Private Securities Litigation Reform Act of 1995 ("PSLRA") directs that, in a class action arising under the Securities Act of 1933, 15 U.S.C. § 77a *et seq*., a district court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members," whom the law refers to as the "most adequate plaintiff."  15 U.S.C. § 77z-1(a)(3)(B)(i).  The PSLRA further articulates the procedures for a court to identify the most adequate plaintiff, which entails "a presumption that the most adequate plaintiff" is the "person or group of persons" that satisfies three conditions.  *Id.* § 77z-1(a)(3)(B)(iii)(I).  First, the most adequate plaintiff must have either filed the complaint or moved for appointment as lead plaintiff.  *Id*. § 71z-1(a)(3)(B)(iii)(I)(aa).  Second, the most adequate plaintiff must, in the court's determination, have the largest financial interest in the relief sought by the class.  *Id*. § 77z-1(a)(3)(B)(iii)(I)(bb).  Third, the most adequate plaintiff must otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.  *Id*. § 77z-1(a)(3)(B)(iii)(I)(cc).  Another member of the purported plaintiff class may rebut the most adequate plaintiff presumption by "proof . . . that the presumptively most adequate plaintiff" either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  *Id.* § 77z-1(a)(3)(B)(iii)(II)(aa)-(bb).

Under the statute, "not later than 60 days after the date on which the notice [advising members of the purported class] is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class."  *Id.* § 77z-1(a)(3)(A)(i)(II).  As noted, that

---

[1]  In light of Ortiz's non-opposition to the other motions, only the Nelson and Qiu Motion and the Yuanshan Motion are analyzed herein.

notice was published on August 9, 2022, Dkt. 33-3, making motions due by October 11, 2022.  The Yuanshan Motion and the Nelson and Qiu Motion were filed on that deadline.  Dkts. 27, 30.  By moving in a timely manner for appointment as lead plaintiff, both (1) Yuanshan and (2) Nelson and Qiu satisfy the first requirement for the most adequate plaintiff presumption.

Turning to the second requirement, the two movants disagree as to who possesses the largest financial interest in the relief sought by the class.  In assessing which proposed lead plaintiff has the largest financial interest, courts consider the four so-called *Lax* factors:  "(i) the gross number of shares purchased; (ii) the net number of shares purchased; (iii) the net funds spent; and (iv) the net loss suffered." *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17 Civ. 6130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017) (citing *Pirelli Armstrong Tire Corp. v. LeBranche & Co., Inc.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004)); *see Lax v. First Merch. Acceptance Corp.*, No. 97 Civ. 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997).  The fourth factor—the net loss— is generally regarded as "the most compelling." *Nurlybaev*, 2017 WL 5256769, at *1 (citing *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015)).

An initial question is whether to aggregate Nelson's and Qiu's financial interests.  By its plain language, the PSLRA allows a "group of persons" to serve as lead plaintiff, without imposing any further statutory requirements on such a group.  15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); *see also id.* § 77z-1(a)(2)(B)(i) (requiring the court to "appoint as lead plaintiff the member *or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" (emphasis added)).  As the PSLRA also makes clear, the inquiry turns on whether the group is "most capable of adequately representing the interests" of the class, applying the criteria set forth in the statute. *Id.*; *cf. Cohen v. Luckin Coffee Inc.*, No. 20 Civ. 1293 (LJL), 2020 WL 3127808, at *3 (S.D.N.Y. June 12, 2020) ("The majority of courts, including those in this District . . . permit[] unrelated investors to join together as a group seeking lead-plaintiff

status on a case-by-case basis, if such a grouping would best serve the class." (alterations in original) (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008))).  Nor does the statute impose on a group seeking lead plaintiff appointment any greater showing with respect to its financial interest by virtue of its status as a group.  *See Hansen v. Ferrellgas Partners, L.P.*, Nos. 16 Civ. 7840 (RJS), 16 Civ. 8850 (RJS), 16 Civ. 9294 (RJS), 2017 WL 281742, at *3 n.4 (S.D.N.Y. Jan. 19, 2017) ("Accordingly, to the extent decisions in this District suggest that the PSLRA requires a greater showing from a group with the largest financial interest, the Court respectfully disagrees that the statute imposes such a rule." (internal citation omitted)).  The Court therefore finds it appropriate to aggregate Nelson and Qiu's financial interest in assessing the second requirement of the most adequate plaintiff presumption.

When the financial interests of Nelson and Qiu are aggregated and the result is compared to Yuanshan's financial interest, the *Lax* factors point in different directions.  The Yuanshan Motion contends that Yuanshan purchased, and retains, 91,000 Tuya ADSs at a total cost of $519,750 and suffered a loss $354,900 in connection with these purchases.  Dkt. 29 at 9.  The Nelson and Qiu Motion states that Nelson and Qiu spent $635,117.71 on 56,560 shares, yet sold 31,560 of those shares during the class period for $173,976.80, resulting in a net expenditure of $461,140.91, and experienced a total net loss of $417,387.56.  Dkt. 31 at 4; Dkt. 32-3.  Thus, Yuanshan purchased a greater gross and net number of shares and spent a larger amount of net funds to do so, whereas Nelson and Qiu suffered a greater net financial loss.  Ultimately, the Court concludes that Yuanshan's larger number of purchased and retained shares and greater net expenditures on those shares do not overcome the nearly 15% higher loss suffered by Nelson and Qiu in assessing the respective financial interests, mindful that net financial loss is the "most compelling" of the *Lax* factors.  *Nurlybaev*, 2017 WL 5256769, at *1; *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 130-31 (S.D.N.Y. 2011) (determining that the party that suffered roughly 10% greater loss and

purchased more total shares had a greater financial interest than the party with greater net share purchases and greater net expenditures).

With Nelson and Qiu having established the largest financial interest, the Court turns to whether the Nelson and Qiu group also meets the requirements of Rule 23. The Rule imposes two requirements that are relevant here: the representative party's claims and defenses must be "typical of the claims or defenses of the class" and the party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4).[2] The Nelson and Qiu group satisfies both.

The typicality requirement is satisfied when the representative party's claim "arises from the same course of events" as those of the rest of the class, and when the party "makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). Nelson and Qiu's claims do not differ in any material respect from those of any other member of the class: like the rest of the class, they allege that they purchased Tuya ADSs in or traceable to the Tuya IPO, were negatively affected by Defendants' alleged false and misleading statements and omissions, and suffered damages. Complaint ¶¶ 52-58; Dkt. 31 at 5.

The adequacy requirement is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley*, 272 F.R.D. at 131. Two of these conditions are clearly met as to Nelson and Qiu. As to the first, Robbins Geller and Glancy Prongay & Murray LLP are experienced plaintiffs' firms with active securities practices. *See generally* Dkts. 44-1, 44-2. And as to the third, Nelson and Qiu's alleged losses of over $400,000, *see* Dkt. 32-3,

---

[2] At the lead plaintiff selection stage of the case, only typicality and adequacy are relevant. *Lopez v. CTPartners Exec. Search Inc.*, No. 15 Civ. 1476 (PAE), 2015 WL 2431484, at *2 (S.D.N.Y. May 18, 2015) ("At this early stage of litigation, however, 'only the last two factors– typicality and adequacy–are pertinent.'") (internal quotation marks omitted).

constitute a sufficient interest in the outcome of this case to ensure their vigorous advocacy on behalf of the class.

With respect to the second consideration, the Court is aware of no condition that would give rise to a conflict between Nelson and Qiu's interests and the interests of other class members:  all seek to maximize the recovery paid by Defendants for their alleged misrepresentations.  But while the PSLRA by its terms does not impose any enhanced adequacy showing for a group, some courts have identified adequacy-related considerations arising from the concern that the group will not function cohesively and will be unable to effectively coordinate and supervise counsel.  *See Hansen*, 2017 WL 281742, at *4 (collecting cases).  Thus, in *Varghese*, the court identified five factors to consider when assessing the adequacy of a proposed lead plaintiff group:  (1) "the existence of a pre-litigation relationship between group members," (2) "involvement of the group members in the litigation thus far," (3) "plans for cooperation," (4) "the sophistication of [the group's] members," and (5) "whether the members chose outside counsel, and not vice versa."  *Varghese*, 590 F. Supp. 2d at 392.  While the court in *Varghese* articulated those factors in determining whether to allow an aggregated motion for lead plaintiff, this Court finds them helpful in assessing adequacy under Rule 23.  *See Hansen*, 2017 WL 281742, at *4-5 (considering the *Varghese* factors in finding a *prima facie* showing of adequacy under Rule 23).[3]

Nelson and Qiu's joint declaration in support of their motion, which detailed their relationship and plans for managing this litigation, guides the application of the *Varghese* factors.

---

[3] Some courts have required "an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs" when applying the five factors.  *Varghese*, 590 F. Supp. 2d at 392; *accord Cohen*, 2020 WL 3127808, at *3 (same).  Because the text of the PSLRA contains no indication that a group must make a greater evidentiary showing to be appointed lead plaintiff, this Court finds more persuasive the approach in *Hansen*, where the court construed the *Varghese* factors not as imposing a "required evidentiary showing" but rather as factors which may be used to examine a group's *prima facie* showing of adequacy under Rule 23.  *Hansen*, 2017 WL 281742, at *4.

Dkt. 32-4.  The declaration does not reflect a pre-litigation relationship or how the group met counsel, instead only referencing Nelson and Qiu "sp[eaking] together and with counsel regarding this case." *Id.* ¶ 7.  The first factor therefore cuts against adequacy.  Nelson and Qiu have attended a joint meeting to discuss the litigation at which they "discussed the claims against defendants, serving jointly as lead plaintiff, and ensuring that the class's claims will be efficiently and zealously prosecuted by [their] oversight of [their] proposed lead counsel." *Id.* ¶ 7.  This demonstrates Nelson and Qiu's involvement in the litigation at its early stages, which weighs in their favor as to the second factor.  Nelson and Qiu also have presented a plan for cooperation, which consists of allowing either to "organize a meeting or conference call at any time . . . with or without counsel" as well as being "able and willing to reconvene future calls, as well as attend in-person meetings if necessary, and communicate via email, as often and regularly as necessary to ensure responsible oversight and direction of lead counsel." *Id.* ¶ 8.  This cooperation plan supports adequacy.  *See Hansen*, 2017 WL 281742, at *4 (finding that a declaration that the group members "'have discussed with each other the importance of joint decision-making and maintaining regular communication that will enable [them] to confer, with or without counsel, via telephone and/or e-mail on short notice to ensure' timely decision-making, and have 'exchanged contact information and . . . instructed counsel to arrange for calls upon [their] demand,'" adequately supported the group members' "understanding of the importance of coordination, communication, and oversight over counsel" and thus supported adequacy (alterations in original)).  As to the fourth *Varghese* factor, Nelson and Qiu's collective thirty-five years of investing and business experience speaks to their sophistication and therefore weighs in their favor.  Dkt. 32-4 ¶¶ 2-3.  Finally, Nelson and Qiu's declaration does not indicate whether they were introduced by outside counsel or whether they chose that counsel.  Dkt. 32-4.  This factor therefore is either neutral or weighs against adequacy.  All considered, the Court determines that Nelson and Qiu have made a *prima facie* showing of

adequacy for purposes of Rule 23.

Thus, Nelson and Qiu satisfy the PSLRA's requirements to trigger the presumption that they are the most adequate plaintiff:  they have moved to be appointed lead plaintiff, have the largest financial interest in the relief sought by the class, and both advance claims typical of the class and have shown that they will fairly and adequately protect the interests of the class.  *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).  That presumption is rebuttable "only upon proof by a member of the purported plaintiff class" that such presumptive lead plaintiff will not fairly and adequately represent the class's interests or otherwise is subject to unique defenses that render such plaintiff incapable of adequately representing the class.  *Id.* § 77z-1(a)(3)(B)(iii)(II).  Yuanshan merely argues that Nelson and Qiu are inadequate under Rule 23 because they are an "improper attorney-assembled group," Dkt. 37 at 8, an argument that the Court has rejected above.  With the presumption not rebutted, the Court concludes that Nelson and Qiu are the most adequate plaintiff and therefore appoints them lead plaintiff.  *See id.* § 77z-1(a)(3)(B)(i).

Having been appointed lead plaintiff, Nelson and Qiu are vested with the authority to select lead counsel for the class:  "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  *Id.* § 77z-1(a)(3)(B)(v).  Courts in this District have held that this provision does envision some role for the court in supervising the selection of lead counsel, but it "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention."  *In re KIT Digit., Inc. Sec. Litig.*, 293 F.R.D. 441, 448 (S.D.N.Y. 2013) (quoting *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008)).  For that reason, courts routinely grant their approval when a lead plaintiff selects as lead counsel a law firm experienced in the type of class actions for which it has been retained.  *See, e.g.*, *Denny v. Canaan, Inc.*, No. 21 Civ. 3299 (JPC), 2021 WL 5847647, at *5 (S.D.N.Y. Dec. 9, 2021).  The Court has

reviewed Robbins Geller's and Glancy Prongay & Murray LLP's firm resumes, which set forth their extensive experience representing plaintiffs in class actions and profile the partners and other attorneys who have led those representations. *See generally* Dkts. 44-1, 44-2. Consequently, the Court grants approval for Nelson and Qiu's choice of lead counsel.

The Court therefore appoints Nelson and Qiu as lead plaintiff and Robbins Geller Rudman & Dowd LLP and Glancy Prongay & Murray LLP as lead counsel in this case. Defendants shall confer with Lead Plaintiff regarding a proposed schedule for any amendment to the Complaint and Defendants' responses to the Complaint or an amended complaint. The parties shall submit a status update to the Court by January 6, 2023.

The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 23, 27, and 30.

SO ORDERED.

Dated: December 21, 2022
     New York, New York

_____
JOHN P. CRONAN
United States District Judge