UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

XIAOMENG LIAN, Individually and on behalf of all others similarly situated,

               Plaintiff,

       - against -

TUYA INC., XUEJI (JERRY) WANG, LIAOHAN (LEO) CHEN, YI (ALEX) YANG, YAO (JESSIE) LIU, SCOTT SANDELL, CARMEN CHANG, JEFF IMMELT, QING GAO, JING HONG, MORGAN STANLEY & CO. LLC, BofA SECURITIES, INC., and CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED,

               Defendants.

Civil Action No. 1:22-cv-06792-JHR

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

DAVIS POLK & WARDWELL LLP

450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000

*Attorneys for Defendants Tuya, Inc., Scott Sandell, Carmen Chang, and Jeff Immelt*

ROPES & GRAY LLP

1211 Avenue of the Americas
New York, NY 10036
Tel: (212) 596-9000

*Attorneys for Defendants Morgan Stanley & Co. LLC and BofA Securities, Inc.*

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL BACKGROUND ....................................................................................................... 2

    A.    Tuya's Business.................................................................................................... 2

    B.    Tuya's March 2021 IPO and the Risk Disclosures in the Registration Statement........... 3

    C.    The May 2021 Publication of the Safety Detectives Report ............................................ 5

    D.    The Aftermath of the May 2021 Safety Detectives Report and the Alleged Impact on Tuya ............................................................................................................... 5

    E.    The Absence of Any Allegation in the Amended Complaint That Tuya Knew or Could Have Known That Some of Its Customers Would Be Suspended .................................. 8

ARGUMENT ................................................................................................................................ 9

I.    Plaintiffs Do Not Allege That Tuya's Registration Statement Contained Any Untrue Statements of Material Fact ............................................................................................ 10

II.    Plaintiffs Fail to Identify Any Actionable Omission in Tuya's Registration Statement................................................................................................................................ 10

    A.    Tuya Had No Duty to Predict That Some of Its Third-Party Customers Would Later Be Banned by Amazon for Engaging in a Fake-Review Scheme That Tuya Knew Nothing About...................................................................................................... 11

    B.    The General Risks Posed by Sham-Review Schemes—to the Extent Knowable—Were Disclosed or Otherwise Known to the Market................................................. 16

    C.    Items 303 and 105 Do Not Create a Duty to Disclose Unknown and Unknowable Information ........................................................................................................ 20

III.    Plaintiffs' Control Person Claims Should Be Dismissed............................................. 22

CONCLUSION............................................................................................................................ 23

## TABLE OF AUTHORITIES

CASES

PAGE(S)

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................. 9

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
  980 F. Supp. 2d 564 (S.D.N.Y. 2013) ............................................................. 18, 19

*Barilli v. Sky Solar Holdings, Ltd.*,
  389 F. Supp. 3d 232 (S.D.N.Y. 2019) ................................................................. 18

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ...................................................................................... 10, 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................ 9, 10

*Bettis v. Aixtron SE*,
  2016 WL 7468194 (S.D.N.Y. Dec. 20, 2016) ...................................................... 18

*Caiafa v. Sea Containers Ltd.*,
  525 F. Supp. 2d 398 (S.D.N.Y. 2007) ................................................................. 10

*Cuoco v. Moritsugu*,
  222 F.3d 99 (2d Cir. 2000) ................................................................................. 23

*In re DraftKings Inc. Sec. Litig.*,
  --- F. Supp. 3d ---, 2023 WL 145591 (S.D.N.Y. Jan. 10, 2023) ............................ 21

*Garber v. Legg Mason, Inc.*,
  537 F. Supp. 2d 597 (S.D.N.Y. 2008) ................................................................. 20

*Gutman v. Lizhi Inc.*,
  --- F. Supp. 3d ---, 2022 WL 4646471 (E.D.N.Y. Oct. 1, 2022) ...................... 14, 16

*Harris v. AmTrust Fin. Servs. Inc.*,
  135 F. Supp. 3d 155 (S.D.N.Y. 2015) ................................................................... 9

*HEXO Corp. Sec. Litig.*,
  524 F. Supp. 3d 283 (S.D.N.Y. 2021) ................................................................. 21

*Hutchison v. Deutsche Bank Sec., Inc.*,
  647 F.3d 479 (2d Cir. 2011) ............................................................................... 22

*In re IAC/Interactivecorp Sec. Litig.*,
  695 F. Supp. 2d 109 (S.D.N.Y. 2010) ................................................................ 18

*Indiana Pub. Ret. Sys. v. SAIC, Inc.*,
  818 F.3d 85 (2d Cir. 2016) ................................................................................ 21

*In re IndyMac Mortg.-Backed Sec. Litig.*,
  718 F. Supp. 2d 495 (S.D.N.Y. 2010) ................................................................ 18

*Jiajia Luo v. Sogou, Inc.*,
  465 F. Supp. 3d 393 (S.D.N.Y. 2020) ........................................................... 10, 21

*Jones v. Party City Holdco, Inc.*,
  230 F. Supp. 3d 185 (S.D.N.Y. 2017) ................................................................ 10

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010) .............................................................................. 10

*Lin v. Interactive Brokers Grp., Inc.*,
  574 F. Supp. 2d 408 (S.D.N.Y. 2008) ................................................................ 11

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  272 F. Supp. 2d 243 (S.D.N.Y. 2003) ................................................................ 10

*Martin v. Quartermain*,
  732 F. App'x 37 (2d Cir. 2018) ......................................................................... 21

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
  538 F. Supp. 2d 662 (S.D.N.Y. 2008) .....................................................12, 13, 16

*In re Proshares Tr. Sec. Litig.*,
  889 F. Supp. 2d 644 (S.D.N.Y. 2012) ................................................................ 12

*Rubinstein v. Credit Suisse Grp. AG*,
  457 F. Supp. 3d 289 (S.D.N.Y. 2020) ........................................................... 19, 21

*In re Sanofi Sec. Litig.*
  87 F. Supp. 3d 510 (S.D.N.Y. 2015) .................................................................. 23

*Schoenhaut v. Am. Sensors Inc.*,
  986 F. Supp. 785 (S.D.N.Y. 1997) ..................................................................... 19

*Scott v. Gen. Motors Co.*,
  46 F. Supp. 3d 387 (S.D.N.Y. 2014) ............................................................. 11, 16

*Seibert v. Sperry Rand Corp.*,
    586 F.2d 949 (2d Cir. 1978) ................................................................................................ 18

*Shapiro v. TG Therapeutics, Inc.*,
    --- F. Supp. 3d ---, 2023 WL 405020 (S.D.N.Y. Jan. 25, 2023) ............................................ 18

*Singh v. Schikan*,
    106 F. Supp. 3d 439 (S.D.N.Y. 2015) .................................................................. 10. 11, 13, 16

*Sira v. Morton*,
    380 F.3d 57 (2d Cir. 2004) ................................................................................................ 2

*In re Unicapital Corp. Sec. Litig.*,
    149 F. Supp. 2d 1353 (S.D. Fla. 2001) .................................................................................. 22

*Wandel v. Gao*,
    590 F. Supp. 3d 630 (S.D.N.Y. 2022) .................................................................... 14, 16, 21

*Youngers v. Virtus Inv. Partners Inc.*,
    195 F. Supp. 3d 499 (S.D.N.Y. 2016) .................................................................................. 22

*In re Yunji Inc.*, *Sec. Litig.,*
    2021 WL 1439715 (E.D.N.Y. Mar. 31, 2021) ...................................................................... 21

## STATUTES & RULES

15 U.S.C. § 77k ................................................................................................................ 10
15 U.S.C. § 77o ................................................................................................................ 22
17 C.F.R. § 229.10 ........................................................................................................... 21
17 C.F.R. § 229.105 ......................................................................................................... 20
17 C.F.R. § 229.303 ......................................................................................................... 20

Defendants Tuya, Inc. ("Tuya"), Scott Sandell, Carmen Chang, and Jeff Immelt (together with Tuya, the "Tuya Defendants") and Morgan Stanley & Co. LLC and BofA Securities, Inc. (together, the "Underwriter Defendants," and collectively with the Tuya Defendants, "Defendants")[1] respectfully submit this memorandum of law in support of their Motion to Dismiss the Amended Complaint with prejudice.

## PRELIMINARY STATEMENT

This is a classic case of hindsight pleading. The Amended Complaint alleges that Tuya—a technology company that provides a cloud platform its customers can use to develop and make smart devices—violated the Securities Act because it did not predict the future. In particular, Plaintiffs claim that the Registration Statement for Tuya's March 2021 initial public offering ("IPO") should have anticipated and disclosed a chain of subsequent events over which Tuya had no control: that some of Tuya's third-party customers would be accused *two months after the IPO*—in a May 2021 report by an independent cybersecurity organization—of posting fake reviews of these customers' own products on Amazon's website; that Amazon would later suspend some of those third parties; and that these suspensions would have an indirect negative impact on Tuya's business.

The Amended Complaint fails to state a claim under the Securities Act. All of these events—the discovery of the third-party customers' fake reviews, their suspension from Amazon, and the alleged ensuing harm to Tuya's business—transpired *months after* Tuya's IPO. Plaintiffs do not contend that Tuya was involved in any of the underlying conduct. And the Amended Complaint contains no well-pleaded allegations connecting Tuya to its third-party customers' conduct or suggesting that Tuya knew or could have known of this conduct, which

---

[1] To Defendants' knowledge, none of the remaining named defendants has been served.

1

was designed to evade detection.  Indeed, the Amended Complaint specifically alleges that *even Amazon itself* was not able to detect the fake-review scheme before the publication of the May 2021 report.

The securities laws do not require clairvoyance.  The Amended Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

### A.    Tuya's Business

Tuya provides a platform for devices to operate on a cloud-based network—referred to as the Internet of Things ("IoT")—through which electronic devices can connect and interact with each other and the consumers or "end users" using the devices.  (*See* Amended Complaint (Dkt. 56) ("AC") ¶ 45.)  IoT is the technology behind "smart" devices such as lights and appliances that can be controlled remotely (e.g., through a smartphone or voice commands).  (Ex. 1 (Registration Statement ("Reg. St.")) at 122.)[2]  Tuya's IoT cloud platform enables its customers—businesses and developers—to "transform from offering traditional products" (e.g., light bulbs) "into providing software-enabled smart devices and IoT services" (e.g., Wi-Fi "smart" light bulbs).  (*Id.* at 130.)

At the time of its IPO, Tuya had over 5,000 customers from across the globe, including Westinghouse, Monster, Lloyd's, Schneider Electric, Philips, Softbank, Lenovo, and Panasonic. (*See id.* at 143–44.)  In addition to smart lightbulbs, Tuya's IoT platform has been used by its customers to develop, for example, motion sensors, smart home appliances, and smart home entertainment and power devices.  (*See id.* at 122, 143–45.)  At the time of the IPO, Tuya's IoT

---

[2] "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint."  *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations and internal quotation marks omitted).

platform was used by over 2,700 brands to develop their smart devices, which consisted of more than 1,100 product types sold in over 220 jurisdictions.  (*Id.* at 134.)

While Tuya's core business serves both original equipment manufacturers ("OEMs") and the brand-name companies ("brands") that purchase smart devices from OEMs and ultimately sell the products to end users, "it is typically the OEMs, instead of brands, who directly place orders" for Tuya's IoT platform to purchase its IoT solution to produce smart devices, rather than purchasing smart devices directly.  (*Id.* at 95; *see also id.* at 24.)  End users generally do not purchase smart devices directly from Tuya, and the brands that sell to end users frequently purchase from OEMs rather than directly from Tuya.  (*See id.*; AC ¶¶ 4–5, 52.)  As a result, in a typical transaction from production to the end user's purchase, there are multiple layers between Tuya and the actual individuals who use the relevant products—the IoT solution is sold by Tuya to the OEM, the OEM manufactures and sells a smart device that utilizes the IoT solution to the brand, and then the brand sells the smart device to the end user who actually uses the device. (*See id.*)  The Amended Complaint does not allege (and could not allege) that Tuya has any involvement in its customers' sales efforts or in those of brands selling to end users.

**B.    Tuya's March 2021 IPO and the Risk Disclosures in the Registration Statement**

On March 18, 2021, Tuya conducted its IPO pursuant to a registration statement declared effective the prior day (the "Registration Statement").  (AC ¶ 67.)  On March 19, 2021, Tuya filed a Form 424B4 prospectus, which formed part of and incorporated the Registration Statement.  (*Id.*)  In its IPO, Tuya offered 43.6 million American Depository Shares ("ADSs") at $21 per ADS.[3]  (*Id.* ¶ 77.)  Morgan Stanley & Co. LLC, BofA Securities, Inc., and China

---

[3] Each ADS equaled one Class A ordinary Tuya share.  (*Id.* ¶ 28.)

3

International Capital Corporation Hong Kong Securities Limited served as joint bookrunners for Tuya's IPO, and Tuya's legal advisors were, among other law firms, Davis Polk & Wardwell LLP.  (*Id.* ¶ 39; Reg. St. at 215.)  The underwriters were advised by Cleary Gottlieb Steen & Hamilton LLP.  (*See* Reg. St. at 215.)

The Registration Statement repeatedly and extensively disclosed a number of key risks to Tuya's business.  Tuya described its historical operating financial data, warning investors that it had "a history of net loss" and that it "may not be able to achieve or sustain profitability in the future."  (*Id.* at 33 (emphasis removed).)

The Registration Statement also starkly warned investors that Tuya may lose customers and that the loss of customers—particularly its largest customers—could have a significant negative impact on its business.  For example, Tuya emphasized that "the loss of customers or reductions in the end users' usage levels may have a negative impact on our business, results of operations, and financial condition."  (*Id.*)  The Registration Statement also explained that Tuya generates "a significant portion of our revenues from a limited number of major customers and *any loss of business from these customers could have a negative impact on our revenues and harm our business*."  (*Id.* (emphasis in original).)  Tuya further disclosed that the "*loss of any major customer, or a significant decrease in the volume of customer demand* or the price at which we sell our products to customers, *could materially adversely affect our financial condition and results of operations*."  (*Id.* (emphasis added).)

Tuya also made clear that "[m]any factors not within our control could cause the loss of, or reduction in, business or revenues from any customer, and these factors are not predictable."  (*Id.*)  One such risk was that "[a]dverse publicity (whether or not justified) relating to events or activities attributed to us, members of our workforce, agents or *third parties we rely on, may*

4

*tarnish our reputation and reduce the value of our brand*." (*Id.* at 36 (emphasis added).)

### C.    The May 2021 Publication of the Safety Detectives Report

On May 6, 2021—seven weeks after Tuya's IPO—an independent "cybersecurity organization" called Safety Detectives published a report (the "Safety Detectives Report" or the "Report") regarding fake reviews on Amazon's website. (AC ¶ 78.)  The Report stated that, using nonpublic data Safety Detectives obtained through a temporary data leak, Safety Detectives had uncovered a scheme in which vendors generated fake five-star reviews on Amazon's website. (*See id.*)  The Report explained that participants in the scheme were "able to avoid detection from Amazon's review moderation team" by routing payments to reviewers through PayPal, and by following instructions designed to "cover their tracks" and "present the reviews as legitimate." (*See* Ex. 2 (Safety Detectives Report) at 2, 5–6.)

The Report does not identify Tuya in any way or suggest that Tuya had any involvement in or knowledge of this illicit scheme.  Nor does it claim that any of the Tuya customers identified by name in the Registration Statement (or the brands identified in the Amended Complaint) participated in the fake-review scheme.

Moreover, the Amended Complaint does not allege that Tuya has or had any connection to Safety Detectives, had advance knowledge of the Report prior to its publication, had access to the leaked data reviewed by Safety Detectives, or participated in any way in the practices revealed in the Report.

### D.    The Aftermath of the May 2021 Safety Detectives Report and the Alleged Impact on Tuya

In the weeks and months following the publication of the Safety Detectives Report on May 6, 2021, reports emerged that Amazon suspended the accounts of numerous vendors on its platform, presumably as a result of the revelations in the Safety Detectives Report. (*See* AC

5

¶¶ 79–85, 87.)

For example, on May 11, 2021, *TechCrunch* reported that "several top Chinese sellers disappeared from Amazon over the past few days," including "[a]t least eleven accounts that originate from Greater China." (*Id.* ¶ 80 (emphasis removed).) *PC Mag* reported on the same day that "the timing certainly suggests" the vendors in question had been removed because they had been engaging in fake-review scams. (*Id.* ¶ 79.) The *TechCrunch* article quoted a vendor who described the scale of Amazon's suspensions as "unprecedented." (*Id.* ¶ 81.) Plaintiffs allege that in the ensuing months, Amazon banned "hundreds of Chinese brands across thousands of sellers' accounts" because the sellers "knowingly, repeatedly, and significantly violated Amazon's seller policies, particularly its policies around review abuse." (*See id.* ¶ 87.)

None of these articles identifies Tuya or in any way suggests Tuya was implicated in the banned vendors' violations of Amazon's policies. Plaintiffs, however, allege (without providing any factual basis) that some of the "major Chinese merchants" suspended by Amazon were "significant customers of Tuya." (*Id.* ¶ 79.) Specifically, the Amended Complaint alleges that Aukey, VanTop, Apeman, and Zebao were Tuya customers and that Amazon suspended them as a result of the publication of the Safety Detectives Report; the Amended Complaint further alleges that these suspensions harmed Tuya's business. (*See id.* ¶¶ 82–85, 88–95, 99–113.) The Amended Complaint, however, does not contain any facts to support the assertion that these brands were even Tuya's customers (as opposed to brands that purchased products containing Tuya's technology from third parties, like OEMs). The Amended Complaint also does not—and cannot—allege that Tuya played any role in or was aware of any of these brands' efforts to market and sell their own products on Amazon.

As the Amended Complaint acknowledges, after Amazon began to impose the bans, Tuya

6

affirmatively disclosed in a subsequent earnings call—which took place after Tuya's IPO—that it had come to learn that some of its customers had been impacted by the Amazon bans. (Ex. 3 (Second Quarter 2021 Earnings Call Transcript (August 18, 2021)) at 8 ("[O]ur customers face a series of challenges, including Amazon's strict execution of seller policy."); *id*. at 9 ("[T]here are [a] limited number of e-commerce customers who were impacted by" Amazon banning cross-border e-commerce stores.).) On the same call, Tuya reported that its total revenue for the second quarter of 2021 "beat Street consensus[] estimate[s] by approximately 5%." (*Id.* at 6.) On the call, Tuya also provided a revenue forecast for the third quarter of 2021, which reflected Tuya's views "on the market and our operating conditions." (*Id.* at 8.) In this context, Tuya stated: "Although our customers face a series of challenges, including Amazon's strict execution of seller policy, rising raw material prices and shortage of semiconductor components in the third quarter. We continue to support our customers to tide over the near-term difficulties [with our] powerful capabilities of IoT platform and innovations." (*Id.*) Tuya also explained that Amazon's bans were "an unexpected event [that] happened in the last couple of months"—i.e., *after* the IPO. (*Id.* at 9.) In subsequent earnings calls, Tuya continued to keep investors updated on the unfolding effects of the Amazon bans on Tuya's and its customers' businesses. (Ex. 4 (Third Quarter 2021 Earnings Call Transcript (November 23, 2021)) at 3 ("Despite the impacts of . . . Amazon store closures . . . , we still achieved roughly 45% year-over-year growth in total revenues."); Ex. 5 (Fourth Quarter 2021 Earnings Call Transcript (March 15, 2022)) at 5 ("[C]ertain e-commerce customers affected by store closures in the third quarter are also showing signs of recovery.").)

Tuya also exceeded its revenue guidance for the second quarter of 2021 and met revenue guidance in subsequent quarters. (*See* Ex. 6 (Morgan Stanley Report (August 18, 2021)) at 1

7

(noting that Tuya's "2Q21 total revenue . . . beat[] [Morgan Stanley] and the company's high-end guidance by 5%"); Ex. 7 (BofA Securities Report (August 18, 2021)) at 1 (noting same); Ex. 4 (Third Quarter 2021 Earnings Call Transcript (Nov. 23, 2021)) at 6 (third quarter revenue approached "the high end of the guidance range that we previously provided"); Ex. 5 (Fourth Quarter 2021 Earnings Call Transcript (March 15, 2022) at 5 (fourth quarter revenue was "around the mid-point of our previous guidance range"); Ex. 8 (Morgan Stanley Research Report (March 15, 2022)) at 2 (noting Tuya's revenue grew 19% year over year in fourth quarter 2021, "better than our estimate and in line with management's guidance at the midpoint").)  Plaintiffs do not question the accuracy of this financial data.

### E.    The Absence of Any Allegation in the Amended Complaint That Tuya Knew or Could Have Known That Some of Its Customers Would Be Suspended

The Amended Complaint does not allege that Tuya had any knowledge prior to the IPO that its customers would be banned by Amazon, or that customers engaged in fake-review schemes of any kind—much less the particular fake-review scheme revealed by the Safety Detectives Report.  Nor do Plaintiffs allege that Tuya had any unique insight into reviews on Amazon's platform.  To the contrary, Plaintiffs allege that Amazon's regulation of vendors and product reviews is powered by "highly confidential standard operating procedures and algorithms" (*see* AC ¶ 65), into which Tuya, as a third party, would have no visibility.[4]  Plaintiffs

---

[4] In fact, the Amended Complaint cites an indictment from a criminal case against individuals involved in a scheme to bribe Amazon employees to reinstate suspended vendors' accounts.  (AC ¶ 65.)  Though not otherwise relevant to Tuya or this case, this indictment only further illustrates the highly confidential nature of Amazon's product-review algorithms and other proprietary technology, as well as the inability of a third party like Tuya to track vendor activity on Amazon's website.  (Ex. 9 (Indictment) ¶ 3a (noting the stolen "formulae for the algorithms that power . . . Amazon's product-review rankings"); ¶ 10 (describing how "Amazon uses algorithms to control the operation of . . . product reviews in product listings"); ¶ 10 (stating that Amazon seeks to maintain the "confidentiality of information about the algorithms and other systems that control the Amazon Marketplace, including by restricting access to this information and by marking it confidential"); ¶ 12 (stating that Amazon "requires employees and contractors not to provide outsiders with access to the tools that they use in connection with the regulation of [third-party] sellers and products on the Amazon Marketplace").)

also do not allege that Tuya had any advance knowledge of or involvement in Amazon's decision to implement account suspensions in the aftermath of the publication of the Safety Detectives Report.  Finally, Plaintiffs do not allege that Tuya was in any way involved in the fake-review scheme described in the Safety Detectives Report.

The only information that Plaintiffs specifically allege Tuya could have known prior to the IPO is the general existence of fake reviews on e-commerce platforms and Amazon's general ability to suspend accounts engaging in them.  (*See id.* ¶¶ 60, 62–66.)  The Amended Complaint, however, makes clear that this information was widely known to the public.[5]

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557); *see also Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 170 (S.D.N.Y. 2015) ("[A Section 11 complaint] must still allege a false or misleading statement or omission in more than conclusory terms."), *aff'd*, 649 F. App'x 7 (2d Cir. 2016).

To state a Section 11 claim, Plaintiffs must plead that the Registration Statement

---

[5] For example, Plaintiffs refer to a September 4, 2020 *Financial Times* article reporting Amazon's deletion of product reviews after determining that users had been compensated for posting the favorable reviews.  (*Id.* ¶ 64; *see* Ex. 10.)  Plaintiffs also cite the September 2020 indictment of six individuals in connection with a scheme through which Amazon employees were bribed to reinstate the accounts of Amazon vendors suspended for "manipulating product reviews to deceive consumers."  (AC ¶ 65; *see also* Ex. 9.)  Moreover, Plaintiffs refer to a February 16, 2021 report on the consumer website *Which?*, finding that "[d]espite measures to combat fake reviews on its platform, our latest investigation has discovered a thriving industry of review manipulation businesses targeting Amazon['s] marketplace and evading its checks."  (AC ¶ 66 (second alteration added); *see also id.* ¶¶ 60, 62–63.)  The same article also noted that Amazon "says that it suspends, bans and takes action against those who violate these policies."  (Ex. 11 (Hannah Walsh, *How a Thriving Fake Review Industry Is Gaming Amazon marketplace*, Which? (Feb. 16, 2021)).)

contained either a misstatement or an omission of material fact that rendered it misleading or that was otherwise required to be disclosed in the Registration Statement. *Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358–59 (2d Cir. 2010); *Caiafa v. Sea Containers Ltd.*, 525 F. Supp. 2d 398, 408 (S.D.N.Y. 2007). Plaintiffs do neither.

## I.    Plaintiffs Do Not Allege That Tuya's Registration Statement Contained Any Untrue Statements of Material Fact

To allege a misrepresentation, Plaintiffs must assert that the Registration Statement contained "an untrue statement of a material fact." *Jones v. Party City Holdco, Inc.*, 230 F. Supp. 3d 185, 189–90 (S.D.N.Y. 2017) (citing 15 U.S.C. § 77k(a) (internal quotation marks omitted)). Plaintiffs do not even attempt to do this. While the Amended Complaint includes conclusory allegations that statements in Tuya's Registration Statement were "materially false and misleading" (*see, e.g.*, AC ¶¶ 128, 131, 133), Plaintiffs do not point to any aspect of the Registration Statement that they claim is affirmatively false. And mere "formulaic recitation[s]" and "naked assertion[s]" are insufficient to plead a misrepresentation. *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 405–06 (S.D.N.Y. 2020) (first alteration added) (quoting *Twombly*, 550 U.S. at 555, 557).

## II.    Plaintiffs Fail to Identify Any Actionable Omission in Tuya's Registration Statement

In the absence of any alleged misstatement, Plaintiffs' case instead depends on their assertion that Tuya omitted material information that it was required to disclose in the Registration Statement.

To plead an actionable omission, a plaintiff must allege "a legal obligation to disclose the allegedly omitted information." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 248 (S.D.N.Y. 2003). An omission is material (and therefore actionable) only if it relates to information that, if disclosed, "'would have been viewed by the reasonable

investor as having significantly altered the total mix of information made available.'" *Singh v. Schikan*, 106 F. Supp. 3d 439, 446–47 (S.D.N.Y. 2015) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988)). "[T]he accuracy of offering documents must be assessed in light of the information available at the time they were published," and Plaintiffs must allege that "the Registration Statement contained a material misstatement or omission *at the time it became effective.*" *Scott v. Gen. Motors Co.*, 46 F. Supp. 3d 387, 394 (S.D.N.Y. 2014) (emphasis added and internal quotation marks omitted), *aff'd*, 605 F. App'x 52 (2d Cir. 2015).

Plaintiffs fail to meet these standards.

### A.    Tuya Had No Duty to Predict That Some of Its Third-Party Customers Would Later Be Banned by Amazon for Engaging in a Fake-Review Scheme That Tuya Knew Nothing About

A cognizable Section 11 claim exists only when the allegedly undisclosed information "both existed and w[as] known or knowable" to the issuer "at the time of the offering." *Id.* (quoting *Lin v. Interactive Brokers Grp. Inc.*, 574 F. Supp. 2d 408, 421 (S.D.N.Y. 2008)) (internal quotation marks omitted).

Plaintiffs' Section 11 claims are premised on the notion that Tuya should have anticipated that its business would suffer when some of its alleged third-party customers were suspended from Amazon months *after* the IPO. This claim asks the Court to determine that Tuya could and should have predicted a chain of future, post-IPO events unrelated to its own operations: (1) that dozens of Amazon vendors, including some of Tuya's customers (or its customers' customers) would be found by an independent cybersecurity organization to have engaged in fake-review scams on Amazon's website; then, (2) that Amazon would initiate an "unprecedented" crackdown against the offending vendors, permanently banning them from its platform; and finally, (3) that this chain of events involving third parties would have a negative downstream impact on Tuya's business. (*See* AC ¶¶ 128, 131, 133–35, 137, 139, 141, 143, 145,

148, 150, 152, 154.)  But the securities laws do not require issuers to be "clairvoyan[t]" in predicting future events.  *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 664 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009); *accord In re ProShares Tr. Sec. Litig.*, 889 F. Supp. 2d 644, 656 (S.D.N.Y. 2012) ("It is not a material omission to fail to predict future market performance."), *aff'd*, 728 F.3d 96 (2d Cir. 2013).

Indeed, Plaintiffs do not allege—nor could they—that Tuya had or should have had any advance knowledge of either the suspensions (which first began months *after* Tuya's IPO) or the circumstances that led to them.  To the contrary, the Amended Complaint confirms that Amazon itself—doubtless the party best positioned to detect fraud allegedly occurring on its own platform—was unable to identify the fake-review scheme prior to publication of the Safety Detectives Report in May 2021, seven weeks after Tuya's IPO.  (*See* AC ¶¶ 13, 78 (alleging that payments for fake reviews were made through PayPal so that Amazon could not view the details of payment, allowing "fake reviewers and vendors to avoid suspicion"); *see also* Ex. 2 (Safety Detectives Report) at 5 (explaining techniques enabling participants in scheme to "avoid detection from Amazon's review moderation team").)

Without any plausible basis to assert that Tuya knew of the Amazon bans or its customers' alleged behavior prior to the IPO, the Amended Complaint relies instead only on conclusory assertions and innuendo to suggest that Tuya could nevertheless have known of its third-party customers' involvement in these schemes.

*First*, Plaintiffs suggest that Tuya could have known of its customers' review scams and the possibility of an Amazon ban solely by virtue of its "relationships" with its customers.  (*See, e.g.*, AC ¶ 11 (alleging that Tuya touted "its deep relationships with its customers" but failed to disclose that some customers were "engaged in fake review practices"); *id*. ¶ 121 (similar).)  But

12

the unremarkable fact that Tuya had relationships with its customers does not come close to supporting an inference that Tuya knew the details of how those customers sold *those customers' own* products to third-party end users, let alone that those customers employed a scheme on a third-party platform that was specifically designed to avoid detection.

Courts have repeatedly rejected securities claims where, as here, the plaintiff fails to explain why or how the defendant should have known of information in the possession of customers and other third parties.  For example, in *Panther Partners*, 538 F. Supp. 2d at 670–71, the court dismissed plaintiff's claim that the defendant should have disclosed that some of its customers were experiencing a buildup of inventory that would lead them to reduce their future orders.  The court made this determination notwithstanding that, unlike in this case, the issuer was actually alleged to have had *some* knowledge of the relevant information—i.e., the quantity of its customers' historical orders.  *Id.* at 670.  Despite that, the court held that there was no duty to disclose because the plaintiff had not explained "why or how the Defendant should have known this information" given that "[t]here is no duty to track customers' inventory or to advise customers that they are ordering too much product."  *Id*.  Similarly, in *Singh*, 106 F. Supp. 3d at 449, the court rejected the notion that the defendant issuer should have disclosed that the composition of a clinical study would cause it to fail because a third party, "rather than [defendant], had control over the study and that only [that third party], rather than [defendant], knew the study's actual composition."

The same principle at work in *Panther Partners* and *Singh* applies here:  Plaintiffs fail to allege "why or how" Tuya could or should have known information in the possession and control of third parties.  Plaintiffs do not and cannot allege that Tuya had any duty to monitor its customers' compliance with the policies of third-party e-commerce platforms, like Amazon, on

13

which those customers chose to sell their products, let alone that any such monitoring would have revealed to Tuya what even Amazon itself could not detect.  There is no such duty.

*Second*, the Amended Complaint implies that Tuya should have known its customers were engaged in fake-review schemes simply because those customers were Chinese and Tuya is based in China.  (*See, e.g.*, AC ¶ 57 (explaining article that described "brushing as commonplace and crucial to Chinese vendors' survival on e-commerce platforms" and reported that "Chinese e-commerce merchants even take classes on how to avoid getting caught for fake transactions"); *id*. ¶ 64 (quoting article describing "little-known Chinese brands, who often offer to send reviewers products for free in return for positive posts").)  Setting aside that such an implication is offensive and discriminatory, that type of allegation amounts to nothing more than rank speculation, which does not suffice to state a claim.  *See Wandel v. Gao*, 590 F. Supp. 3d 630, 641–42 (S.D.N.Y. 2022) (rejecting as "speculative at best" plaintiffs' theory that China-based company was "in a unique position to recognize the coronavirus threat . . . because the Company had apartments and employees in Wuhan itself"); *Gutman v. Lizhi Inc.*, --- F. Supp. 3d ---, 2022 WL 4646471, at *6 (E.D.N.Y. Oct. 1, 2022) (declining to infer China-based company had "knowledge of the severity of COVID-19 based solely on its location").

*Third*, Plaintiffs suggest that because certain Tuya executives worked at Alibaba years before Tuya's IPO (AC ¶¶ 29–31), and because Plaintiffs claim that Alibaba had confronted fake-review issues on its main shopping site, Taobao, in the past (*id*. ¶¶ 7, 56–58), Tuya should have somehow known that these different customers were involved in different fake-review schemes that Amazon itself had been unable to detect.  This assertion too makes no sense.  Plaintiffs fail to allege that any Tuya executives were involved in Alibaba's efforts to confront

14

fake reviews, or even had roles at Alibaba in which they would have heard about fake reviews.[6]

Nor do they explain how historical experience at Alibaba would enable these executives to detect

whether Tuya's customers (or Tuya's customers' customers) were commissioning fake reviews

on Amazon when Amazon itself had been unable to detect that conduct.

*Finally*, Plaintiffs allege that Tuya's disclosures regarding its Net Promoter Score

("NPS") omitted to disclose that Tuya's high NPS was attributable at least in part to falsified

Amazon reviews of products containing Tuya's technology.  (*See id*. ¶¶ 73, 131.)  But this

allegation—in addition to being based on the unknown and unknowable fake-review scheme—

also misconstrues Tuya's disclosure.  The Registration Statement makes clear that the NPS does

not measure the perception of Tuya by *end users* (i.e., Amazon customers, among others), but

rather is based on the perception of Tuya's *own direct customers*:

> "We had over 5,000 customers in 2020, *primarily including brands, OEMs, industry operators and system integrators*. . . . In January 2021, we achieved a Net Promoter Score (NPS) of 75, which indicated a high degree of satisfaction for our products and services among *our customers. NPS measures the willingness of customers to recommend a company's products or services to other potential customers*, and is viewed as a proxy for measuring customers' loyalty and satisfaction with a company's product or service."

(Reg. St. at 143 (emphasis added).)  As explained above, because Tuya generally sells to OEMs

(who, in turn, sell to brands who, in turn, sell to end users) there are often multiple layers

between Tuya and the end user.  (*Supra* at 2–3.)  Though Plaintiffs allege that certain Tuya

customers manipulated the Amazon reviews of *these customers'* end-user customers, this would

not affect Tuya's NPS, which measures the satisfaction of Tuya's *own* direct customers.

---

[6] Notably, the Amended Complaint does not allege that any Tuya executive's job responsibilities included Alibaba's main shopping site, Taobao.  (*See id*. ¶¶ 29 (alleging defendant Wang worked in Alibaba's Cloud and Alipay business); 30 (alleging defendant Chen worked in Alibaba's Cloud and O2O (online-to-offline) business); 31 (alleging defendant Yang worked in Alibaba's Cloud E-commerce and Cloud OS business)).

In short, Plaintiffs have not alleged that Tuya actually knew of its customers' alleged involvement in fake-review schemes, and they have pleaded no facts to plausibly allege that Tuya could have known this information at the time of the IPO. Plaintiffs' theory amounts to nothing more than an impermissible attempt to "plead[] by hindsight," a tactic routinely rejected by courts. *See*, *e.g.*, *Panther Partners*, 538 F. Supp. 2d at 673 (rejecting allegations amounting to assertion "Defendants must have known" simply "because something did in fact occur later"); *Wandel*, 590 F. Supp. 3d at 643 (rejecting similar attempt at "hindsight pleading"). Plaintiffs have therefore failed to meet the "minimum" requirement to "plead facts to demonstrate that allegedly omitted facts both existed, and were known or knowable, at the time of the offering." *Gen. Motors Co.*, 46 F. Supp. 3d at 394.

The Amended Complaint should be dismissed because Tuya had no duty to disclose information that was not known or knowable at the time of the IPO. *See, e.g., Panther Partners*, 538 F. Supp. 2d at 664 (dismissing Securities Act claims premised on allegation that defendant "should have disclosed information that it did not (and could not) know" at the time of the offering); *Singh*, 106 F. Supp. 3d at 449 (rejecting Securities Act claims premised on allegation that defendant should have disclosed information in sole possession of third party); *Gen. Motors Co.*, 46 F. Supp. 3d at 394 (rejecting Securities Act claims premised on allegation that defendant should have disclosed a rise in excess inventory that took place after the IPO); *Lizhi*, --- F. Supp. 3d ---, 2022 WL 4646471, at *4–5 (rejecting Securities Act claims premised on allegation that the defendant should have disclosed the risk posed by COVID-19, where complaint did not support inference that such risk was known at time of offering).

**B.      The General Risks Posed by Sham-Review Schemes—to the Extent Knowable—Were Disclosed or Otherwise Known to the Market**

To the extent Plaintiffs allege that Tuya should have disclosed the risks posed by (1) the

general existence of fake-review scams, (2) Amazon's power to crack down on vendors engaging in these scams, and/or (3) the potential impact on Tuya's business of its customers' losing business, those risks were publicly known before and at the time of the IPO and/or disclosed by Tuya.

As to the existence of fake-review schemes and Amazon's ability to crack down on vendors on its platform, the Amended Complaint affirmatively alleges that fake-review schemes, including on Amazon, were widely known to the public before the IPO.  (AC ¶¶ 7–9, 56–60, 62–66.)  For example, in April of 2019, *Which?* reported that certain tech products sold on Amazon were "littered with potentially fake reviews."  (*Id.* ¶ 60.; Ex. 12 (Hannah Walsh, *Thousands of 'Fake' Customer Reviews Found on Popular Tech Categories on Amazon*, Which? (Apr. 16, 2019)).)  And in September of 2020, the *Financial Times* reported on "Amazon's longstanding problem with fake or manipulated reviews."  (Ex. 10; *see also* ¶ 64.)  Plaintiffs' allegations also make clear that it was widely publicized that Amazon sought to prevent vendors from engaging in these fake-review scams.  (*See* AC ¶¶ 8, 59–60, 62–66.)  For instance, Plaintiffs point to a January 2021 *CNN Business* report relaying Amazon's statement that "sellers can be removed from the site" for engaging in brushing.  (Ex. 13; *see also* AC ¶ 62.)  The Amended Complaint also references a February 2021 *Which?* article explaining that "Amazon prohibits sellers from paying third parties in exchange for reviews, and says that it suspends, bans and takes action against those who violate these policies."  (Ex. 11; *see also* AC ¶ 66.)  Amazon vendors partaking in fake-review schemes were also at the center of the September 2020 indictment of six individuals in connection with a scheme in which Amazon employees were bribed to reinstate Amazon merchant accounts suspended for "manipulating product reviews."  (AC ¶ 65.)

The news reports Plaintiffs identify regarding the prevalence and consequences of fake

17

Amazon review schemes were readily accessible to the public in various online outlets and therefore "equally available to the Defendants and investors alike." *Bettis v. Aixtron SE*, 2016 WL 7468194, at *11–13 (S.D.N.Y. Dec. 20, 2016) (concluding that defendant had no duty to disclose publicly reported information regarding the termination of government subsidies). Accordingly, Tuya had no duty to disclose this information. *See In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 576 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014) ("[T]here is no duty to disclose information to one who reasonably should be aware of it." (quoting *Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978)); *see also Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 254–55 (S.D.N.Y. 2019) (finding no duty to disclose publicly reported information about the Japanese solar market); *In re IndyMac Mortg.-Backed Sec. Litig.*, 718 F. Supp. 2d 495, 512 (S.D.N.Y. 2010) (finding "no duty to disclose the rating agencies['] conflicts of interest," as this risk "had been known publicly for years" (internal quotations omitted)).[7]

As to the risk to Tuya of its customers' losing business, the Registration Statement included ample warnings to investors regarding risks posed by losses of Tuya's customers. Specifically, Tuya warned:

- "[T]he loss of customers or reductions in the end users' usage levels may have a negative impact on our business, results of operations, and financial condition. Our customers may cease, or reduce their usage of our products and services due to a variety of reasons or factors . . . that are outside our or our customers' control." (Reg. St. at 24.)

- "*We generate a significant portion of our revenues from a limited number of major customers and any loss of business*

---

[7] The omission of public information from an issuer's disclosures is not material because such information is "*already* part of the total mix of information available to investors." *In re IAC/InterActiveCorp Sec. Litig.*, 695 F. Supp. 2d 109, 118 (S.D.N.Y. 2010) (emphasis added); *see also Shapiro v. TG Therapeutics, Inc.*, --- F. Supp. 3d ---, 2023 WL 405020, at *3–4 (S.D.N.Y. Jan. 25, 2023 (dismissing claims where publicly available information was already "priced into" shares, and further disclosure would not have altered "total mix of information").

*from these customers could have a negative impact on our
revenues and harm our business.*" (*Id.* at 33.)

Tuya also warned that its business could be harmed by risks it did not know or control: "Many factors not within our control could cause the loss of, or reduction in, business or revenues from any customer, and these factors are not predictable." (*Id.*) Amazon's ban of Tuya's alleged customers based on their purported practice of manipulating end-user reviews was certainly "not within [Tuya's] control," as Tuya did not know about it and had no influence over it.

Having "ampl[y] disclos[ed]" these "broader risk[s]," Tuya was not required to predict the "specific risk" that eventually materialized. *Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d at 579; *see also Rubinstein v. Credit Suisse Grp. AG*, 457 F. Supp. 3d 289, 297 (S.D.N.Y. 2020) (dismissing Section 11 claim where disclosures "alert[ed] prudent investors to the nature of the offerings and the risks entailed," because "Defendants were not required to predict the precise manner in which risks will manifest themselves" (internal quotation marks omitted)).

Applying these principles, courts have rejected similar claims arising from an issuer's loss of business from particular customers, where—as here—the issuer disclosed risks related to its loss of business from customers and made no representations regarding future business from the customers at issue. For example, in *Schoenhaut v. American Sensors, Inc.*, 986 F. Supp. 785 (S.D.N.Y. 1997), the plaintiffs alleged that the defendant failed to disclose a reduction in orders from a major customer, and the court dismissed the claim because (1) the prospectus "did not list the current volume of sales to [the customer] or predict future sales levels" or even "suggest that [the customer]—or any other customer—would remain a customer, let alone a large one"; and (2) the prospectus stated that the issuer's largest customers "may vary from period to period" and that "the loss of a large customer could materially affect the company." *Id.* at 791, 793.

19

Similarly, in *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 665 (2d Cir. 2009), the court dismissed a Section 11 claim alleging that an issuer failed to disclose increased customer withdrawals, because the company *did* disclose that "it was the nature of [the company's] business that clients can [presently] terminate their relationships with us . . . for any number of reasons." *Id.* at 613. Likewise, Tuya warned investors that it might lose customers' business for a variety of reasons; it did not predict future sales levels to any of the alleged customers banned from Amazon after the IPO or suggest that they (or any other customers) would remain Tuya customers. Therefore, there is no legal basis to hold Tuya liable for failing to disclose the specific risks that these alleged customers would be banned from Amazon months after the IPO because of their purported involvement in a fake-review scheme revealed months after the IPO.

### C.    Items 303 and 105 Do Not Create a Duty to Disclose Unknown and Unknowable Information

Plaintiffs claim that, by failing to disclose the purportedly "ongoing and widespread violations of Amazon's policies prohibiting fake reviews and brushing by [its] China-based customers," Tuya violated Items 303 and 105 of SEC Regulation S-K. (AC ¶¶ 121, 123.) These provisions require that issuers disclose "any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations," 17 C.F.R. § 229.303(b)(2)(ii), and discuss "the material factors that make an investment in the registrant or offering speculative or risky," *id.* § 229.105(a).

But neither Item 303 nor Item 105 required Tuya to disclose what it did not and could not

know at the time of its IPO.[8]  On the contrary, to allege a violation of either Item, a complaint must plead facts "demonstrat[ing] *actual knowledge* of an existing trend, event, or risk." *Rubinstein*, 457 F. Supp. 3d at 300 (emphasis in original); *see also, e.g., Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 95 (2d Cir. 2016) (requiring "actual knowledge" for Item 303 claim); *Martin v. Quartermain*, 732 F. App'x 37, 42 n.3 (2d Cir. 2018) ("Item 303 applies only to known trends or uncertainties . . . [a]nd the complaint does not plausibly allege that [defendant] had actual knowledge") (internal quotation marks omitted); *In re DraftKings Inc. Sec. Litig.*, --- F. Supp. 3d ---, 2023 WL 145591, at *38 (S.D.N.Y. Jan. 10, 2023) (requiring "actual knowledge" for Item 303 and Item 105).  Consistent with this, the court in *Wandel v. Gao*, for example, dismissed claims under Items 105 and 303 because the plaintiff failed to allege the defendant issuer's "actual knowledge"—at the time of its IPO in January 2020—that a small number of COVID-19 infections would grow into a global pandemic.  *See* 590 F. Supp. 3d at 641, 646–47 (holding contrary interpretation of Items 105 and 303 would be "contrary to the regulations' own text and refuted by a long line of authority in this circuit"); *see also In re Yunji Inc., Sec. Litig.*, 2021 WL 1439715, at *8 (E.D.N.Y. Mar. 31, 2021) (holding post-IPO developments insufficient to establish actual knowledge of trend prior to IPO); *HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 302 (S.D.N.Y. 2021) (dismissing an Item 105 claim where plaintiffs failed to "allege with particularity that the Securities Act Defendants knew at the time of the IPO that there was a significant risk").

Here, Plaintiffs do not allege that Tuya had any advance knowledge that Amazon would

---

[8] In addition, "Item 303 is not applicable at all to a registration statement on Form F-1," like Tuya's. *Sogou, Inc.*, 465 F. Supp. 3d at 413; *see also* 17 C.F.R. § 229.10 (providing that Regulation S-K applies to "Registration statements under the Securities Act (part 239 of this chapter) *to the extent provided in the forms to be used for registration under such Act*" (emphasis added)); *see generally* Form F-1, https://www.sec.gov/files/formf-1.pdf (noting application of other Items under Regulation S-K, but not Item 303).

suspend certain Tuya customers from its platform.  Nor do Plaintiffs allege anything to suggest that Tuya should have known of its customers' alleged violations of Amazon's policies, much less that Tuya *actually knew* of these violations.  *See* Point II.A, *supra*.  Absent such allegations, Plaintiffs fail to plead violations of Items 303 and 105.

### III.    Plaintiffs' Control Person Claims Should Be Dismissed

Plaintiffs assert control person claims against Carmen Chang, Jeff Immelt, and Scott Sandell under Section 15 of the Securities Act.[9]  (AC ¶¶ 33–35, 38, 171–78; 15 U.S.C. § 77o.) Such claims "necessarily fail[]" where, as here, Plaintiffs have "failed to plead a § 11 claim." *See, e.g.*, *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011) (dismissing control person claim in absence of primary violation).

In addition, the Amended Complaint acknowledges that Mr. Immelt did not sign the Registration Statement and did not become a director until the Registration Statement became effective.  (AC ¶¶ 35, 38.) Thus, Plaintiffs' Section 15 claim against Mr. Immelt fails for the additional reason that the Amended Complaint contains no allegations suggesting that he exercised "actual control" over Tuya's IPO, other than conclusory allegations "aggregating every individual defendant."  *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 524–25 (S.D.N.Y. 2016); *see also In re Unicapital Corp. Sec. Litig.*, 149 F. Supp. 2d 1353, 1368 (S.D. Fla. 2001) (dismissing Section 15 claims against individual named as one about to assume director-like functions, but not actually director at time registration statement was issued).

---

[9] Plaintiffs also assert claims under Section 15 against the remaining Individual Defendants (Xueji (Jerry) Wang, Liaohan (Leo) Chen, Yi (Alex) Yang, Yao (Jessie) Liu, Qing Gao, and Jing Hong).  (AC ¶¶ 29–32, 36–38, 171–78.)  However, as those defendants have not yet been served, Plaintiffs' claims against them are not directly at issue on this motion.

**CONCLUSION**

For the reasons set forth above, the Defendants respectfully request that the Court dismiss the Amended Complaint.  Because any amendment would be futile—including because all the events Plaintiffs allege Tuya should have disclosed took place *after* its IPO—Defendants respectfully request that the Court order dismissal with prejudice.[10]

Dated: May 1, 2023                              Respectfully submitted,
New York, New York


DAVIS POLK & WARDWELL LLP          ROPES & GRAY LLP

*/s/ Edmund Polubinski III*                   */s/ Gregg L. Weiner*

Edmund Polubinski III                        Gregg L. Weiner
Mari Grace Byrne                             Adam M. Harris
Marie Killmond
Christopher Johnson                          1211 Avenue of the Americas
                                            New York, New York 10036
450 Lexington Avenue                         Tel: (212) 596-9000
New York, New York 10017                     Email:  gregg.weiner@ropesgray.com
Tel: (212) 450-4000                                  adam.harris@ropesgray.com
Email:  edmund.polubinski@davispolk.com
        mari.grace@davispolk.com             *Attorneys for Defendants Morgan Stanley &*
        marie.killmond@davispolk.com         *Co. LLC, and BofA Securities, Inc.*
        christopher.johnson@davispolk.com

Jonathan K. Chang
10/F The Hong Kong Club Building
3A Chater Road
Hong Kong SAR, China
Tel: (852) 2533-3300
Email:  jonathan.chang@davispolk.com

*Attorneys for Defendants Tuya, Inc., Scott*
*Sandell, Carmen Chang, and Jeff Immelt*

---

[10] *See In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 548–49 (S.D.N.Y. 2015) (denying leave to amend on futility grounds), *aff'd sub nom*, *Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (same).