UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

XIAOMENG LIAN, Individually and on behalf of all others similarly situated,

Plaintiff,

- against -

TUYA INC., XUEJI (JERRY) WANG, LIAOHAN (LEO) CHEN, YI (ALEX) YANG, YAO (JESSIE) LIU, SCOTT SANDELL, CARMEN CHANG, JEFF IMMELT, QING GAO, JING HONG, MORGAN STANLEY & CO. LLC, BofA SECURITIES, INC., and CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LIMITED,

Defendants.

Civil Action No. 1:22-cv-06792-JPC

---

## REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

DAVIS POLK & WARDWELL LLP

450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000

*Attorneys for Defendants Tuya, Inc., Yi (Alex) Yang, Scott Sandell, Carmen Chang, and Jeff Immelt*

ROPES & GRAY LLP

1211 Avenue of the Americas
New York, NY 10036
Tel: (212) 596-9000

*Attorneys for Defendants Morgan Stanley & Co. LLC, BofA Securities, Inc., and China International Capital Corporation Hong Kong Securities Limited*

**TABLE OF CONTENTS**

PAGE

A.   Tuya Had No Duty To Disclose Information About Alleged Illicit Behavior by Some of Its Third-Party Customers That Tuya Knew Nothing About ..................................1

    1.   There Is No Abstract Statutory or Other Duty To Disclose Here...........................2

    2.   Plaintiffs Have Failed To Plead That the Registration Statement Is Misleading by Omission ..................................................................................5

    3.   Defendants Do Not Assert a "Truth on the Market" Defense ................................8

B.   Items 303 and 105 Do Not Create a Duty To Disclose Unknown and Unknowable Information ..............................................................................................9

CONCLUSION...........................................................................................................10

i

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*Arkansas Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*,
879 F.3d 474 (2d Cir. 2018) ............................................................................ 8

*Charter Twp. of Clinton Police & Fire Ret. Sys. v. KKR Fin. Holdings LLC*,
2010 WL 4642554 (S.D.N.Y. Nov. 17, 2010) ............................................... 8

*In re CIT Grp., Inc. Sec. Litig.*,
349 F. Supp. 2d 685 (S.D.N.Y. 2004) ............................................................ 3

*City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*,
587 F. Supp. 3d 56 (S.D.N.Y. 2022) ............................................................. 6

*Degulis v. LXR Biotechnology, Inc.*,
928 F. Supp. 1301 (S.D.N.Y. 1996) ........................................................... 3, 4

*Diehl v. Omega Protein Corp.*,
339 F. Supp. 3d 153 (S.D.N.Y. 2018) ............................................................ 7

*In re FBR Sec. Litig.*,
544 F. Supp. 2d 346. (S.D.N.Y. 2008) ........................................................... 6

*Gutman v. Lizhi Inc.*,
633 F. Supp. 3d 681 (E.D.N.Y. 2022) .......................................................... 10

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983) ................................................................................ 3, 4, 5

*Hutchison v. CBRE Realty Fin.*,
638 F. Supp. 2d 265 (D. Conn. 2009) .......................................................... 3, 4

*Hutchison v. Deutsche Bank Sec. Inc.*,
647 F.3d 479 (2d Cir. 2011) ........................................................................... 4

*In re Initial Pub. Offering Sec. Litig.*,
544 F. Supp. 2d 277 (S.D.N.Y. 2008) ............................................................ 3

*Labul v. XPO Logistics*,
2021 WL 1056828 (D. Conn. Mar. 19, 2021) ................................................ 6

*Litwin v. Blackstone Grp., L.P.*,
634 F.3d 706 (2d Cir. 2011) ........................................................................... 9

*Loc. #817 IBT Pension Fund v. XPO Logistics, Inc.*,
2022 WL 2358414 (2d Cir. June 30, 2022) .................................................... 6

*In re Morgan Stanley Info. Fund Sec. Litig.*,
   592 F.3d 347 (2d Cir. 2010) ............................................................................ 2, 8

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*,
   709 F.3d 109 (2d Cir. 2013) ............................................................................... 9

*In re Omega Healthcare Invs., Inc. Sec. Litig.*,
   563 F. Supp. 3d 259 (S.D.N.Y. 2021) ............................................................... 7

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
   538 F. Supp. 2d 662 (S.D.N.Y. 2008) ............................................................... 2

*Panther Partners Inc. v. Jianpu Tech. Inc.*,
   2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020) ................................................ 10

*Peifa Xu v. Gridsum Holding Inc.*,
   2021 WL 773002 (S.D.N.Y. Feb. 23, 2021) ...................................................... 4

*Rudman v. CHC Grp. LTD*,
   217 F. Supp. 3d 718 (S.D.N.Y. 2016) ............................................................... 6

*Slack Techs., LLC v. Pirani*,
   143 S. Ct. 1433 (2023) ....................................................................................... 3

*Winter v. Stronghold Digital Mining*,
   2023 WL 5152177 (S.D.N.Y. Aug. 10, 2023) ................................................... 5

STATUTES & RULES

15 U.S.C. § 77k(a) ....................................................................................................... 2

iii

As the Opposition[1] confirms, Plaintiffs do not allege any actual false statements in Tuya's Registration Statement.  Instead, Plaintiffs' case turns on only a single category of alleged omissions: namely, that Tuya should have detected and disclosed a surreptitious fake-review scheme on Amazon by some of its third-party customers that even Amazon had been unable to detect.  (*See, e.g.*, Opp. 11–12.)

Plaintiffs do not dispute that Tuya did not *actually know* of its third-party customers' alleged involvement in these schemes.  (Mot. 8–9.)  There is likewise no dispute that Tuya itself had no involvement in these alleged fake-review schemes, no connection to Safety Detectives, no ability to review the Safety Detectives Report prior to publication, no access to the leaked data from which the Report was generated, no insight into Amazon's confidential review-moderation procedures, no foreknowledge of Amazon's "unprecedented" decisions to suspend particular violators after Tuya's IPO, and no way of predicting how these later suspensions might impact its customers' business.  (*Id.* at 5, 6, 8–9, 11.)  Nor, in light of the foregoing, *could* Tuya ever reasonably have known of its customers' alleged involvement in fake-review schemes prior to the publication of the Safety Detectives Report, months *after* Tuya's IPO.

The only question on this Motion, therefore, is whether Tuya had a duty to know and disclose the unknowable—information about hidden, illicit behavior by third parties that Tuya had no reasonable way of knowing.  The clear answer is no.

A.    **Tuya Had No Duty To Disclose Information About Alleged Illicit Behavior by Some of Its Third-Party Customers That Tuya Knew Nothing About**

It is well-established that the securities laws do not impose a general duty to disclose all

---

[1] Capitalized terms are as defined in the Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint (Dkt. 64) ("Mot."), except "Tuya Defendants" now includes Yi (Alex) Yang, "Underwriter Defendants" now includes China International Capital Corporation Hong Kong Securities Limited ("CICC"), and "Defendants" now includes Mr. Yang and CICC (both of whom were served after the Motion had been filed).  Lead Plaintiffs' Opposition (Dkt. 66) is referred to herein as the "Opposition" or "Opp."

potentially material information.  (*See id.* at 10–14, 16 (citing cases).)  Rather, a duty to disclose

arises under Section 11 in only two specific circumstances: (1) if "an affirmative legal disclosure

obligation" requires disclosure; or (2) if disclosure is "necessary to prevent existing disclosures

from being misleading."  *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 (2d Cir.

2010).  This principle flows directly from the text of Section 11, which makes a material

omission actionable *only* if the omitted fact was "required to be stated [in the registration

statement] or necessary to make the statements therein not misleading."  15 U.S.C. § 77k(a).

### 1.    There Is No Abstract Statutory or Other Duty To Disclose Here

The central flaw in Plaintiffs' claim is that there is no abstract legal duty to disclose

misconduct by third parties about which an issuer did not know and never reasonably could have

known.  Tuya did not have a duty to divine its customers' (or its customers' customers'[2])

surreptitious misconduct on Amazon that not even Amazon could detect.  "The securities laws

do not require clairvoyance in the preparation of offering documents."  *Panther Partners, Inc. v.*

*Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 664 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d

Cir. 2009); (*see also* Mot. 11–12).

Plaintiffs' Opposition identifies no statute, rule, or case that holds or even remotely

suggests otherwise.  The Opposition does not attempt to distinguish the cases holding that there

is no abstract duty to disclose unknown or unknowable information (Mot. 11, 13–14, 16); rather,

Plaintiffs assert only that these cases are wrong.  (Opp. 16.)   And although Plaintiffs briefly

reference the correct legal standard (*id*. at 9), the Opposition otherwise ignores that the Securities

---

[2] Plaintiffs' contention that Tuya "admitted that the fake-review practices were carried out by its own customers" (Opp. 12–13, 25) is wrong: The post-IPO disclosures Plaintiffs cite refer to Tuya's customers being "*impacted*" or "*affected*" by the Amazon bans (*id*. at 12–13 (emphasis added)), but this does not mean that the customers themselves were *involved in* the alleged fake-review practices, or that Tuya had any knowledge of whether they were involved.  For this Motion, however, none of this matters: The legal principle (and result) is the same even if one assumes that participants in the fake-review schemes included Tuya's customers.

2

Act and Second Circuit case law clearly require a plaintiff alleging an omission to identify a duty to disclose. Plaintiffs here fail to do this and therefore fail to allege that Tuya omitted to disclose anything it was required to disclose.

Plaintiffs respond that Section 11 is a "strict liability" statute, citing cases that stand for the unremarkable proposition that a plaintiff need not plead intent or any other state of mind to state a Section 11 claim. (*See, e.g.*, *id.* at 10 (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983)).) Defendants do not dispute this basic principle. But those cases answer a different question concerning a different element of a Section 11 claim (i.e., whether there is a state of mind requirement). They are silent on the issue here: whether Plaintiffs have identified a duty to disclose, which they must to plead an actionable omission.[3] And as explained above, Plaintiffs have not done so here. For the same reason, Plaintiffs' implication that Defendants are asserting a due diligence defense on this Motion (Opp. 14–16) is wrong. The issue is Plaintiffs' failure to plead a *prima facie* case: Because they cannot identify a duty to disclose, they cannot plead an actionable omission.

Plaintiffs misconstrue two older district court cases—*Hutchison v. CBRE Realty Fin.*, 638 F. Supp. 2d 265 (D. Conn. 2009) and *Degulis v. LXR Biotechnology, Inc.*, 928 F. Supp. 1301 (S.D.N.Y. 1996)—to suggest they support some generalized duty to disclose all material information, known or unknown. They do not. In *Hutchison*, the plaintiffs did exactly what Plaintiffs here fail to do: They identified a duty to disclose by pointing to a specific disclosure in the issuer's registration statement that they asserted was misleading by omission. As set forth below, *see* Section A.2, *infra*, Plaintiffs here do not. Specifically, the plaintiffs in *Hutchison*

---

[3] The other cases Plaintiffs rely on are inapposite for the same reason. (*See* Opp. 15 n.5 (citing *In re Initial Pub. Offering Sec. Litig.*, 544 F. Supp. 2d 277, 290 n.89 (S.D.N.Y. 2008); *In re CIT Grp.*, *Inc. Sec. Litig.*, 349 F. Supp. 2d 685, 688 (S.D.N.Y. 2004)); Opp. 10 (citing *Slack Techs.*, *LLC v. Pirani*, 143 S. Ct. 1433, 1437 (2023).)

alleged that the issuer there—a commercial real estate lender—had affirmatively stated that none

of *its own* loans had exhibited signs of impairment, even though two loans to a major borrower

"were exhibiting characteristics indicating an impairment . . . had occurred."  638 F. Supp. 2d at

268, 272.  In its discussion, the court noted, citing *Huddleston*, that plaintiffs need not plead

knowledge or any other state of mind.  *Id.* at 274–75.  But because plaintiffs there (unlike here)

had identified a statement that was misleading by omission, the *Hutchison* court did not need to

address the relevant question here: whether there is an abstract, freestanding duty to disclose

unknown and unknowable information.  To the extent the court suggested, in dicta,[4] that there

could be such a duty, that dicta is inconsistent with the text of the statute itself and the Second

Circuit case law above holding the exact opposite.   *Degulis* is even less applicable.  There too,

plaintiffs had identified a statement that was misleading by omission—defendants disclosed

some risks posed by the underwriter of the offerings, but failed to also disclose the biggest, most

obvious risk of them all: their underwriter's highly precarious financial situation.  *Id.* at 1307–08.

Importantly, unlike here, the issuers in *Degulis had reason and ability to know* the financial

situation of their underwriter, whose sole shareholder and managing director served on the

issuers' boards, allegedly took "effective control of the [i]ssuers," and "instigated schemes to

take them public" and "artificially inflate and maintain" their share prices.  *Id.* at 1305, 1307.

        In short, neither *Degulis* nor *Hutchison* undermines the principle that there is no abstract

duty to disclose unknown or unknowable information.  *See*, *e.g.*, *Peifa Xu v. Gridsum Holding

Inc.*, 2021 WL 773002, at \*10 (S.D.N.Y. Feb. 23, 2021) (no duty to disclose information not

"known or knowable" at time of offering); (*see also* Mot. 11, 13–14, 16 (citing cases)).

---

[4] The court ultimately dismissed the complaint, holding that the omitted information was immaterial.  638 F. Supp. 2d at 276–77.  On appeal, the Second Circuit did not address this issue at all.  *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479 (2d Cir. 2011).

4

Finally, Plaintiffs offer *Winter v. Stronghold Digital Mining, Inc.*, 2023 WL 5152177 (S.D.N.Y. Aug. 10, 2023), as supplemental authority (Dkt. 83), but that decision directly undermines Plaintiffs' theory.  Although *Winter*—like *Huddleston*—makes the unremarkable point that Section 11 has no scienter element and that a plaintiff need not *plead* knowledge, *id.* at *6–7, the court did not hold that there was a duty to disclose all material information, whether or not known or knowable.  Instead, *Winter* concluded that plaintiffs there had—unlike Plaintiffs here—identified a specific statement in the offering documents that was misleading by omission by virtue of information that the issuer *actually knew* at the time of the IPO.  *Id.* at *8–9.  For example, the court concluded that a statement that the issuer "anticipated" delivery of a key piece of equipment was misleading because the issuer knew but did not disclose that *the issuer itself* had failed to make timely payment for the equipment *prior to the IPO*.  *Id.* at *8.

### 2.   Plaintiffs Have Failed To Plead That the Registration Statement Is Misleading by Omission

Plaintiffs' Opposition also asserts that certain generalized statements in the Registration Statement are misleading by omission.  (Opp. 10–12.)  But the general statements that Plaintiffs identify are not misleading at all—and they have nothing to do with the possibility that, unbeknownst to Tuya, its customers *might* be engaging in secret fake-review schemes that *might* lead them to be banned from Amazon that *might* have an impact on Tuya's business.

For example, Plaintiffs point to Tuya's statements about its "deep relationships with customers," "thriving ecosystem of brands," and strategy to gain more customers, and they suggest these statements—while not themselves false—were somehow "render[ed] false and misleading" because Tuya did not also disclose that certain of its customers were allegedly involved in fake-review schemes on Amazon.  (*Id.* at 11 (citing ¶¶ 125–127, 129, 138, 144, 149).)  But there is no basis for such a contention.  Tuya did not address its customers'

5

compliance with Amazon's rules at all, much less "suggest[] that the undisclosed improper activity alleged by plaintiffs was *not* occurring." *In re FBR Sec. Litig.*, 544 F. Supp. 2d 346, 358 (S.D.N.Y. 2008) (emphasis added). Moreover, even an issuer's positive statements about its relationship with a *specific* customer do not trigger a duty to disclose "the risk of possible customer loss" absent a "definitive statement that the customer no longer intends to do business with" the issuer. *See Labul v. XPO Logistics*, 2021 WL 1056828, at *20 (D. Conn. Mar. 19, 2021) (internal quotation marks omitted), *aff'd sub nom. Loc. #817 IBT Pension Fund v. XPO Logistics, Inc.*, 2022 WL 2358414 (2d Cir. June 30, 2022); (*see also* Mot. 19–20). Tuya's positive statements about relationships with "customers" *generally* did not trigger a duty to disclose information Tuya concededly did not have about those customers.[5]

Plaintiffs also claim that Tuya's disclosures regarding its past financial performance were misleading because they "attribute[d] Tuya's success to reasons other than its customers' fake review practices." (Opp. 11 (citing *City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*, 587 F. Supp. 3d 56, 86 (S.D.N.Y. 2022).) But the possibility that a company may implicate a duty to disclose *its own* "use of improper or illegal business practices" if they are a material source of its success, *Reckitt Benckiser*, 587 F. Supp. 3d at 86, does not support the notion that an issuer has a duty to uncover and disclose *unknown* illicit conduct by *third parties*, as Plaintiffs contend here. Moreover, Plaintiffs have not plausibly alleged that the use of alleged fake reviews by some of Tuya's customers was a material source of Tuya's financial performance. Instead, the Amended Complaint contains only conclusory allegations

---

[5] Moreover, Tuya's disclosures regarding its "strong relationships" with customers and brands and its goals to develop those relationships in the future are inactionable puffery in any event. *See Rudman v. CHC Grp. LTD*, 217 F. Supp. 3d 718, 728 (S.D.N.Y. 2016) (issuer's disclosures about "strong relationships with its customers" are "no more than puffery which does not give rise to securities violations" (internal quotation marks omitted)).

6

that Tuya achieved various financial metrics "at least in significant part . . . due to said violations of Amazon's policies." (AC ¶¶ 128, 131, 137, 141.) Such conclusory allegations are insufficient. *See Diehl v. Omega Protein Corp.*, 339 F. Supp. 3d 153, 166 (S.D.N.Y. 2018) ("conclusory allegation" that company's operating results "significantly benefited from" alleged wrongdoing is insufficient (internal quotation marks omitted)). Moreover, many of the disclosures Plaintiffs claim "put the source of Tuya's success at issue" (Opp. 11) were historical data, the accuracy of which is not challenged. (AC ¶¶ 125, 127, 140.) Accurate historical data cannot give rise to a securities law violation. *See, e.g.*, *In re Omega Healthcare Invs., Inc. Sec. Litig.*, 563 F. Supp. 3d 259, 277 (S.D.N.Y. 2021) (collecting cases).

Finally, Plaintiffs claim that certain of Tuya's disclosures about *itself* were rendered misleading because the Registration Statement did not also disclose information about its *customers*. (Opp. 11–12.) This of course makes no sense: There is no basis to read statements regarding Tuya's *own* sales and marketing efforts (AC ¶¶ 151, 153) as triggering a duty to disclose Tuya's *customers'* sales and marketing efforts. Nor could Tuya's disclosures regarding the risks of its customers giving negative reviews of Tuya's products (*id*. ¶ 132) trigger a duty to disclose risks related to reviews of Tuya's *customers'* products. No reasonable investor reading Tuya's disclosures would have drawn any inference about the propriety or effectiveness of Tuya's *customers'* marketing efforts. In fact, as explained in the Motion, the Registration Statement disclosed that Tuya could be negatively impacted by loss of customers' business, for a variety of unpredictable reasons. [6] (*See* Mot. 4–5.) While Plaintiffs complain that these

---

[6] Accordingly, Plaintiffs' contention that Defendants somehow failed to address these disclosures in the Motion—and therefore conceded that they were misleading (Opp. 19–20)—is baseless. The Motion made clear that Tuya's Registration Statement was not misleading by omission, including because Tuya adequately disclosed risks related to potential loss of business from customers.

7

disclosures were not specific enough (Opp. 20–21), issuers "need not predict the precise manner in which the risks will manifest." *Charter Twp. of Clinton v. KKR Fin. Holdings LLC*, 2010 WL 4642554, at *18 (S.D.N.Y. Nov. 17, 2010).

Likewise, there is no basis for Plaintiffs' assertion that the Registration Statement was misleading because Tuya failed to disclose "that a material portion of its revenue came from China-based e-commerce merchants or from Amazon." (Opp. 17.) The Registration Statement made clear that e-commerce platforms in general were a source of Tuya's revenue (*e.g.*, Reg. St. at 134) but never purported to identify what portion of its revenue came from which specific sources. When Tuya's disclosures are evaluated "holistically and in their entirety," as they must be, *Morgan Stanley Info. Fund*, 592 F.3d at 365–66, there was nothing misleading about them.

### 3. Defendants Do Not Assert a "Truth on the Market" Defense

Plaintiffs' contention that Defendants are asserting a "truth on the market" defense (Opp. 16–18) is wrong. That defense "attacks the timing of the plaintiffs' purchase of shares," on the theory that the "market price had already adjusted to the revelation of defendants' misstatements" by the time the plaintiff purchased stock. *Arkansas Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474, 485 (2d Cir. 2018). It has nothing to do with the question here: whether there was a duty to disclose unknown or unknowable information.

In any case, Defendants do not, of course, argue that the alleged involvement of some of Tuya's customers in fake-review schemes on Amazon was generally known to the public. As explained above and in the Motion, the opposite was true: Even *Amazon itself* was not aware of the schemes until after the post-IPO publication of the Safety Detectives Report. (*See* AC ¶ 78.) It is true that the *only* information Plaintiffs claim Defendants should have known—about the general existence of fake-review schemes on e-commerce platforms—was *already* well known to the market. (*See* Mot. 16–17.) But Plaintiffs do not allege that those obvious, well-known

8

facts formed the basis of any actionable omission; it is only the unknown and unknowable information that some of Tuya's third-party customers were allegedly engaging in clandestine fake-review activity that Plaintiffs claim Tuya had some obligation to uncover and disclose.

For this reason, among others, *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 718–19 (2d Cir. 2011) and *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*, 709 F.3d 109, 126–27 (2d Cir. 2013), are inapposite. In both cases, the allegedly omitted information (regarding, respectively, the impact of certain investment risks on the issuer and the issuer's alleged abandonment of underwriting guidelines) *was* known or knowable to the issuer and was *not* available to the public. Plaintiffs likewise cite cases where the risk at issue had already transpired, and therefore was known. (*See* Opp. 19–20). But here, as Plaintiffs themselves allege, Amazon's "unprecedented" crackdown on fake-review schemes did not begin until after the publication of the Safety Detectives Report, which was roughly two months after the IPO. (*See* AC ¶¶ 78–87.) And despite Plaintiffs' unsupported assertions (*e.g.*, Opp. 5–6), it makes no difference that Safety Detectives accessed the leaked data before the IPO. Safety Detectives did not publish its findings—and therefore reveal them to Tuya or anyone else[7]—until after the IPO.

**B.      Items 303 and 105 Do Not Create a Duty To Disclose Unknown and Unknowable Information**

Items 303 and 105 of Regulation S-K also did not impose a duty to disclose that some of Tuya's customers allegedly were, unbeknownst to Tuya, engaging in fake reviews on Amazon.

As Plaintiffs concede (*id.* at 22, 23 n.12), Item 303 expressly includes a knowledge

---

[7] The Opposition also asserts that the Individual Defendants and Underwriter Defendants could have known about this elaborately concealed third-party fake-review scheme. (Opp. 23–25). But Plaintiffs offer no valid support for this assertion. Highly generalized publicly available information about the general existence of fake-review schemes (*see id.* at 23–24) obviously does not suffice. And Plaintiffs' suggestion that certain Defendants *should* have known because certain Tuya executives had previously worked at a different e-commerce company (Alibaba) (*id.* at 24) or—more offensively—merely because they are from China (*see id.* at 24, 24 n.14) does not support an inference that the third-party fake-review scheme was somehow knowable. (Mot. 12–15.)

9

requirement, and there is no dispute that Tuya did not know about its customers' alleged misconduct. That is dispositive on Item 303. Plaintiffs nevertheless contend that *Panther Partners Inc. v. Jianpu Technology Inc.* suggests the knowledge requirement is satisfied here. (Opp. 22–23, 23 n.12.) That grossly misreads *Panther Partners*. The plaintiff there alleged that the relevant lending industry—on which the issuer's business heavily relied—was *already* in *known* significant decline by the time of the IPO because, according to pre-IPO reporting, "75% to 90%" of industry participants were operating illegally. *See* 2020 WL 5757628, at *8–10.

Likewise, there is no dispute that a majority of courts hold that actual knowledge is required to plead an Item 105 violation. (*See* Mot. 21.) Plaintiffs cite two cases for the opposite proposition (Opp. 21), but neither actually held that failure to disclose unknown and unknowable information constituted an Item 105 violation. *See Gutman v. Lizhi Inc.*, 633 F. Supp. 3d 681, 690–91 (E.D.N.Y. 2022) (Item 105 did not impose duty to disclose COVID-19 risk because it was "neither known nor knowable" to issuer at the time of IPO); *Panther Partners*, 2020 WL 5757628, at *10 (complaint pleaded Item 303 violation based on risks known at time of IPO).[8]

### CONCLUSION

For the reasons above and in the Motion, Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice and deny leave to amend. (Mot. 23, 23 n.10.)

---

[8] Because Plaintiffs fail to allege an actionable omission in Tuya's Registration Statement, their control person claims under Section 15 of the Securities Act also fail. Moreover, Plaintiffs do not dispute that Defendant Jeff Immelt did not sign the Registration Statement or become a director until it became effective; they thus cannot show, as they must, that he specifically exercised "actual control" over Tuya's IPO. (Mot. 22.)

10

Dated: August 14, 2023                              Respectfully submitted,
New York, New York


DAVIS POLK & WARDWELL LLP            ROPES & GRAY LLP

*/s/ Edmund Polubinski III*                          */s/ Gregg L. Weiner*

Edmund Polubinski III                               Gregg L. Weiner
Marie Killmond                                      Andrew S. Todres
Christopher Johnson

450 Lexington Avenue                                1211 Avenue of the Americas
New York, New York 10017                            New York, New York 10036
Tel: (212) 450-4000                                 Tel: (212) 596-9000
Email:  edmund.polubinski@davispolk.com             Email:  gregg.weiner@ropesgray.com
        marie.killmond@davispolk.com                         andrew.todres@ropesgray.com
        christopher.johnson@davispolk.com
                                                    *Attorneys for Defendants Morgan Stanley &*
                                                    *Co. LLC, BofA Securities, Inc., and China*
Mari Grace Byrne                                    *International Capital Corporation Hong*
901 15th St., NW                                    *Kong Securities Limited*
Washington, DC 20005
Tel: (202) 962-7000
Email: mari.grace@davispolk.com


Jonathan K. Chang
10/F The Hong Kong Club Building
3A Chater Road
Hong Kong SAR, China
Tel: (852) 2533-3300
Email:  jonathan.chang@davispolk.com

*Attorneys for Defendants Tuya, Inc., Yi (Alex)*
*Yang, Scott Sandell, Carmen Chang, and Jeff*
*Immelt*

11