UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

XIAOMENG LIAN, Individually and on behalf
of all others similarly situated,

                     Plaintiff,

        - against -

TUYA INC., XUEJI (JERRY) WANG,
LIAOHAN (LEO) CHEN, YI (ALEX) YANG,
YAO (JESSIE) LIU, SCOTT SANDELL,
CARMEN CHANG, JEFF IMMELT, QING
GAO, JING HONG, MORGAN STANLEY &
CO. LLC, BofA SECURITIES, INC., and
CHINA INTERNATIONAL CAPITAL
CORPORATION HONG KONG SECURITIES
LIMITED,

                     Defendants.

Civil Action No. 1:22-cv-06792-JPC-RFT

---

## REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

DAVIS POLK & WARDWELL LLP

450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000

*Attorneys for Defendants Tuya, Inc., Xueji (Jerry) Wang, Liaohan (Leo) Chen, Yi (Alex) Yang, Yao (Jessie) Liu, Scott Sandell, Carmen Chang, Jeff Immelt, Qing Gao, and Jing Hong*

ROPES & GRAY LLP

1211 Avenue of the Americas
New York, NY 10036
Tel: (212) 596-9000

*Attorneys for Defendants Morgan Stanley & Co. LLC, BofA Securities, Inc., and China International Capital Corporation Hong Kong Securities Limited*

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ............................................................................................ ii

LEGAL STANDARD ................................................................................................... 1

ARGUMENT ............................................................................................................... 2

    I.      PLAINTIFFS DO NOT AND CANNOT ALLEGE THAT DISCLOSURE OF THE ALLEGED "FAKE REVIEW SCHEME" WAS NECESSARY TO PREVENT ANY STATEMENT FROM BEING MISLEADING ......................... 2

          A.    Category 1: Statements Regarding Tuya's Relationship with Its Customers ....................................................................................... 3

          B.    Category 2: Statements Discussing Tuya's Ability to Gain New Customers and Increase Adoption of Its Products and Services .................. 4

          C.    Category 3: Statements Attributing Tuya's Success to Reasons Other Than Its Customers' Alleged Involvement in the Fake Review Scheme ......................................................................... 5

          D.    Category 4: Statements Discussing Tuya's Sales and Marketing Efforts ........................................................................................ 6

          E.    Category 5: Statements Describing the Risks that Tuya's Products May Receive Negative or Insufficiently Positive Reviews ......................... 7

    II.     THE ALLEGEDLY OMITTED INFORMATION WAS UNKNOWABLE AS A GENERAL MATTER ............................................................................. 9

CONCLUSION ........................................................................................................... 10

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*In re Alibaba Grp. Holding Ltd. Sec. Litig.*,
   No. 20 Civ. 9568, 2023 WL 2601472 (S.D.N.Y. Mar. 22, 2023) ........................................... 7

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
   77 F.4th 74 (2d Cir. 2023) ....................................................................................................... 4

*In re Avon Sec. Litig.*,
   No. 19-cv-1429, 2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) ............................................... 3

*Chen v. Missfresh*,
   No. 22-CV-9836 (JSR), 2023 WL 7289750 (S.D.N.Y. Nov. 6, 2023) ............................ 2, 3, 7

*Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*,
   643 F. Supp. 3d 421 (S.D.N.Y. 2022) ................................................................................. 3, 5

*In re Dentsply Sirona, Inc. Sec. Litig.*,
   665 F. Supp. 3d 255 (E.D.N.Y. 2023) ................................................................................. 4, 6

*Easton Rae, LLC v. Violet Grey, Inc.*,
   No. 21-CV-6234 (JPO), 2023 WL 2691459 (S.D.N.Y. Mar. 29, 2023) ................................. 2

*In re Express Scripts Holding Co. Sec. Litig.*,
   No. 16 CIV. 3338 (ER), 2017 WL 3278930 (S.D.N.Y. Aug. 1, 2017) ................................... 3

*In re FBR Inc. Sec. Litig.*,
   544 F. Supp. 2d 346 (S.D.N.Y. 2008) ..................................................................................... 6

*In re Grab Holdings Ltd. Sec. Litig.*,
   No. 1:22 CV 02189 (JLR), 2024 WL 1076277 (S.D.N.Y. Mar. 12, 2024) ............................ 6

*Gutman v. Lizhi Inc.*,
   633 F. Supp. 3d 681 (E.D.N.Y. 2022) .................................................................................. 10

*Halperin v. Ebanker USA.com*,
   295 F.3d 352 (2d Cir. 2002) .................................................................................................... 8

*Hunt v. All. N. Am. Gov't Income Tr.*,
   159 F.3d 723 (2d Cir. 1998) .................................................................................................... 8

*In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*,
   859 F. Supp. 2d 572 (S.D.N.Y. 2012) ..................................................................................... 7

*Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*,
  No. 19 CIV. 7536 (NRB), 2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021) ........................... 5, 6

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010) ................................................................................. 2, 4, 8, 9

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
  No. 1:16-cv-3591 GHW, 2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020) ............................ 4, 8

*In re Sanofi Sec. Litig.*,
  87 F. Supp. 3d 510 (S.D.N.Y. 2015) ..................................................................................... 10

*Schoenhaut v. American Sensors, Inc.*,
  986 F. Supp. 785 (S.D.N.Y. 1997) ..................................................................................... 3, 4

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 16 Civ. 6728, 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) ........................................... 7

*In re Telefonaktiebolaget LM Ericsson Sec. Litig.*,
  675 F. Supp. 3d 273 (E.D.N.Y. 2023) ............................................................................... 5, 6

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016) .................................................................................................. 3

*Wandel v. Gao*,
  590 F. Supp. 3d 630 (S.D.N.Y. 2022) .................................................................................. 10

iii

The Opposition[1] does not dispute Plaintiffs' pleading burden: to state a claim, they must plausibly allege that Tuya had a duty to disclose the Fake Review Scheme. They have failed to do so for at least two discrete reasons.

*First*, Plaintiffs cannot identify any statement in the Registration Statement that was misleading by omission. None of the statements identified in Plaintiffs' Opposition addressed Tuya's third-party customers' marketing practices at all, much less suggested that these customers all complied with Amazon's policies or that the Fake Review Scheme did not exist. And, though Plaintiffs claim the Court's Order already concluded that Tuya's risk disclosures were misleading (Opp. 11–12), the Order made clear that it addressed only whether those disclosures "*inoculate* [Defendants] from Section 11 liability" (Order at 26–27).

*Second*, there was no duty to disclose the Fake Review Scheme because it was not knowable before Tuya's IPO. Plaintiffs allege that Safety Detectives obtained *some* information about *some* fake reviews as a result of a breach of an ElasticSearch server. But that is insufficient to allege that the Fake Review Scheme—that "a *material* percentage of *Tuya's* e-commerce customers were engaged in fake review practices in violation of Amazon's policies" (Order at 4–5 (quoting AC ¶¶ 14, 79))—was knowable to Safety Detectives or anyone else before the IPO.

## LEGAL STANDARD

Plaintiffs acknowledge that the legal standard for a Rule 12(c) motion is identical to that applied on a Rule 12(b)(6) motion, and that Rule 12(c) provides a proper vehicle to challenge the sufficiency of a claim for reasons not raised—or raised but not decided—in a Rule 12(b)(6) motion to dismiss. (*See* Opp. 9–10 & n.6; *see also* Mot. 8.) The Opposition nevertheless asserts

---

[1] Capitalized terms are as defined in the Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings (Dkt. 137) ("Mot."). This reply refers to Lead Plaintiffs' Opposition (Dkt. 145) as the "Opposition" or "Opp." Unless otherwise noted, all emphasis is added and all internal quotation marks and citations are omitted.

that the Court should treat the Motion as one for reconsideration, or apply the law of the case doctrine. (Opp. 9–10.) Neither standard applies because the Court did not consider the arguments the Motion raises. In fact, the Court expressly declined to do so because it concluded that these arguments were "relegated . . . to the[] Reply" or not "developed in … Defendants' moving brief." (Order at 22–23.)[2] The Rule 12(b)(6) standard therefore applies here.

## ARGUMENT

### I.  Plaintiffs Do Not and Cannot Allege That Disclosure of the Alleged "Fake Review Scheme" Was Necessary to Prevent Any Statement from Being Misleading

Plaintiffs acknowledge that, to state a claim, they must plead "a material omission of information that is necessary to prevent existing disclosures from being misleading." (Opp. 10.) In an effort to meet this standard, the Opposition repeats that "once a company speaks on an issue or topic, there is a duty to disclose the whole truth." (*Id.*; *accord id.* at 21, 22.) But Plaintiffs largely ignore the Second Circuit's admonition that mere reference to a topic "d[oes] not trigger a generalized duty requiring defendants to disclose the entire corpus of their knowledge" on that topic. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010).[3] Rather, disclosure is required only where "necessary to avoid rendering misleading" the issuer's affirmative representations. *Id*. at 365. This means that—as the Opposition concedes (Opp. 13, 14, 17), and as explained in *Chen v. Missfresh*, No. 22-CV-9836 (JSR), 2023 WL

---

[2] Plaintiffs also assert that Defendants "waived" arguments by not raising them in the opening brief in support of their Rule 12(b)(6) motion to dismiss. (*See, e.g.*, Opp. 1, 8.) But Plaintiffs do not appear to argue there has been any waiver that would prevent the Court from considering these issues. Nor could they. It is well-established that Defendants may raise new arguments on a Rule 12(c) motion that were not raised in a prior motion to dismiss. *See, e.g.*, *Easton Rae, LLC v. Violet Grey, Inc.*, No. 21-CV-6234 (JPO), 2023 WL 2691459, at *4 (S.D.N.Y. Mar. 29, 2023) (arguments regarding sufficiency of pleading not raised on 12(b) motion may be asserted in 12(c) motion).

[3] Plaintiffs' discussion of *Morgan Stanley Information Fund* focuses on the holding, inapplicable here, that disclosure of the allegedly omitted information was not required by SEC rules. (Opp. 18 n.9 (quoting 592 F.3d at 364).) But Plaintiffs disregard the portion of the Second Circuit's analysis that is relevant here: the "duty to avoid misleading statements." *Morgan Stanley Info. Fund*, 592 F.3d at 365. The court explained that the mere mention of the defendant's affiliated broker-dealer did not trigger a duty to disclose all information about it. *See id.* at 366.

7289750 (S.D.N.Y. Nov. 6, 2023)—the relevant question is whether the challenged disclosures, in context, "suggested to investors that the Fake Review Scheme was not occurring" (Opp. 14). None of the disclosures was misleading under this standard.

### A.       Category 1: Statements Regarding Tuya's Relationship with Its Customers

Plaintiffs have largely abandoned the claim that Tuya's general statements about its customer relationships were misleading by omission.[4] Plaintiffs now focus solely on Tuya's statements about efforts to "grow [its] customer base," "enhance [its] sales and marketing efforts," and "increase brand awareness" or "mind share" among "end users." (Opp. 17–19.) But these statements said or implied nothing about Tuya's *third-party* customers' marketing practices or compliance with Amazon's policies; they certainly did not suggest that the Fake Review Scheme "did not exist." (Mot. 15.)

The cases Plaintiffs cite do not support their claim that these statements "triggered a duty to disclose the Fake Review Scheme." (Opp. 18.) In *Avon Securities Litigation*, statements about efforts to boost revenue were made misleading by the *defendant's* practices. No. 19-cv-1420, 2019 WL 6115349, at *14 (S.D.N.Y. Nov. 18, 2019). In *Vivendi, S.A., Securities Litigation*, statements about the defendant's finances were misleading because of *its* debt. 838 F.3d 223, 251 (2d Cir. 2016).[5] Here, Tuya's mention of its *own* efforts to acquire customers and grow brand

---

[4] Plaintiffs do not dispute—and therefore concede—that the disclosures at Paragraphs 125–127 and 149 of the Amended Complaint are not actionable (*see* Mot. 11–13). *Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) (holding that argument may be deemed conceded if not addressed in opposition brief).

[5] Plaintiffs' description of *Express Scripts Holding Co. Securities Litigation*, No. 16 CIV. 3338 (ER), 2017 WL 3278930 (S.D.N.Y. Aug. 1, 2017) is demonstrably wrong. (Opp. 18 n.9.) Contrary to Plaintiffs' assertion, there had been no disclosure of a breach of contract dispute with a major customer until the end of the class period, when the customer revealed it publicly and sued. *Id*. at *7. The court found the issuer had no duty to disclose troubles with that customer earlier, despite having affirmatively described its "great" relationship with the customer. *Id*. at *12–13. In *Schoenhaut v. American Sensors*, *Inc.*, the court's ruling that the issuer was not required to disclose declining sales to the customer it identified as its largest was based not only on the company's general warnings that customer

3

awareness did not trigger a duty to disclose *customers'* independent marketing practices.

In any event, generalized statements about Tuya's goals to acquire customers and expand brand awareness are puffery. (Mot. 13.) Plaintiffs identify no "context" that could have caused investors reasonably to rely on these statements. (Opp. 19.) In *Plumbers & Pipefitters National Pension Fund v. Davis*—Plaintiffs' sole case—the court held that defendant's statements were misleading in light of information that directly contradicted them. No. 16-cv-3591 GHW, 2020 WL 1877821, at *10 (S.D.N.Y. Apr. 14, 2020). Plaintiffs allege no such information here.

**B.    Category 2: Statements Discussing Tuya's Ability to Gain New Customers and Increase Adoption of Its Products and Services**

Tuya's statements about its ability to win customers and grow its business, leading to, *inter alia*, "growing end user demand," also implied nothing about its *customers'* independent strategies for marketing to end users and growing their *own* businesses. (*See* Mot. 13–14.)

Plaintiffs suggest that no such link is required because the Fake Review Scheme *also* allegedly indirectly impacted Tuya's "growth and sales" and "brand awareness." (Opp. 19–21.) Plaintiffs would require any issuer that discusses its customers, brand, or end-user demand to disclose the "entire corpus" of information which might affect those broad areas of its business— an approach *Morgan Stanley Information Fund* expressly rejects. 592 F.3d at 366; *cf. Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 102 (2d Cir. 2023) ("[T]he duty to disclose more is triggered only where that which is disclosed is sufficiently specific to evoke a reasonable investor's reliance.").[6]  Generic claims about Tuya's ability to win business do not plausibly

---

loss could occur, but also on the fact that the issuer—like Tuya—did not offer any contrary assurance. 986 F. Supp. 785, 793 (S.D.N.Y. 1997).

[6] Both cases Plaintiffs cite (Opp. 20) are inapposite because they involved conduct by *defendants* that directly undermined their statements about *their own* sales strategies. *See* p. 6, *infra* (discussing *In re Dentsply Sirona, Inc. Sec. Litig.*, 665 F. Supp. 3d 255, 285–86, 286 n.11 (E.D.N.Y. 2023)); *Davis*, 2020 WL 1877821 at *9 (statements touting efficacy of *defendants'* sales strategy were misleading where strategy actually harmed defendants' business).

suggest anything about its customers' Amazon reviews.

Plaintiffs also attempt to blur the distinction between Tuya and its customers by arguing that end users of Tuya's customers' products would associate those products with Tuya. (*See* Opp. 20.) To determine whether Tuya had a duty to disclose the Fake Review Scheme, the relevant question is not whether *end users* could conceivably conflate Tuya with its customers, but whether Tuya's Registration Statement misled *investors* regarding its customers' independent marketing practices. Crucially, the Registration Statement says nothing about whether Tuya's customers' marketing efforts were compliant with Amazon's policies.

### C. Category 3: Statements Attributing Tuya's Success to Reasons Other Than Its Customers' Alleged Involvement in the Fake Review Scheme

Tuya's general statements about its business strengths did not trigger a duty to disclose the Fake Review Scheme. (Mot. 14–17.)[7]

*First*, the relevant statements lacked a "reasonably close connection" to the omitted information. *Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, No. 19 Civ. 7536 (NRB), 2021 WL 1199035, at *17 (S.D.N.Y. Mar. 30, 2021), *aff'd sub nom. Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82 (2d Cir. 2022). Tuya's statements about actions *it* planned to take to increase brand awareness among end users did not trigger a duty to disclose its *customers'* independent marketing practices. Tuya's discussions of customer relationships and demand trends likewise cannot establish the requisite connection. Such statements "identif[ying] broad trends and corporate strengths [a]re too non-specific to trigger a duty to disclose." *Id.*; *see also In re Telefonaktiebolaget LM Ericsson Sec. Litig.*, 675 F. Supp. 3d 273, 287 (E.D.N.Y.

---

[7] Plaintiffs do not respond to Defendants' arguments concerning most statements in this Category (including all the statements containing unchallenged financial data, *see* AC ¶¶ 125, 127, 140, 144). They thus concede that these statements are not misleading. *See Curry Mgmt.*, 643 F. Supp. 3d at 426. Plaintiffs' assertion that a company may disclose accurate financial data but also make separate misleading disclosures (Opp. 22–23 & n.11) would only be relevant if Plaintiffs had otherwise identified a misleading disclosure. They have not.

2023) (finding similar disclosures "too generic to be actionable").[8] *Grab Holdings Ltd. Securities Litigation* is inapplicable. No. 22-cv-02189, 2024 WL 1076277 (JLR) (S.D.N.Y. Mar. 12, 2024). That case held that statements about driver retention and incentive payments required disclosure of allegedly contradictory information about falling retention and rising payments. *Id.* at *15. Plaintiffs here, by contrast, claim that because Tuya "relies on its customers' businesses and end-user support for its financial success" (Opp. 23)—not a "business model" unique to Tuya, or even to its industry—Tuya was obliged to disclose *any* factor which might affect those general topics. That is not the standard. *See* pp. 1–2, *supra*.

*Second*, the principle that an issuer may incur an obligation to disclose its own improper conduct by putting the source of its success at issue has never been extended to the *independent* conduct of *third parties*. (Mot. 16.) Plaintiffs cite no case holding otherwise, and they misread *Dentsply*. There, the defendants *coordinated* with third-party distributors by taking "affirmative steps to assist the distributors in eliminating . . . competitors," "t[elling] dentists not to purchase from unauthorized distributors," and initiating "vexatious trademark and tortious interference" lawsuits. 665 F. Supp. 3d. at 270, 286. This coordinated conduct—not the third-party conduct alone—was the basis for the plaintiffs' claim. *Id*. at 286 n.11.[9]

D.      **Category 4: Statements Discussing Tuya's Sales and Marketing Efforts**

Defendants' statements about Tuya's sales and marketing efforts, like the alleged misstatements in Categories 1–3, implied nothing about third parties' conduct and thus triggered

---

[8] Plaintiffs contend that *Menora* and *In re FBR Inc. Securities Litigation*, 544 F. Supp. 2d 346 (S.D.N.Y. 2008), are distinguishable. (Opp. 12.) But Plaintiffs ignore that both courts held that plaintiffs failed to allege actionable misstatements. *See Menora*, 2021 WL 1199035, at *9, 17; *FBR*, 544 F. Supp. 2d at 357–58; Mot. 16.

[9] Further, allegations that "China-based cross border e-commerce merchants" sold "30% of devices powered by Tuya" and that certain Tuya customers (whose overlap with these merchants is not alleged) were impacted by the post-IPO Amazon bans (Opp. 24), fail to plead that the alleged Fake Review Scheme contributed to Tuya's pre-IPO success. (Mot. 17.)

no duty to disclose. Plaintiffs' attempts to distinguish *ITT* fail. (Opp. 24 n. 15.) Plaintiffs again (*see* n.3, *supra*) emphasize one basis for the court's holding while ignoring that the court further analyzed the alleged misrepresentations and found them nonactionable, as they were not "sufficiently connected" to the allegedly undisclosed conduct to suggest it "was not occurring." *In re ITT Educ. Servs., Inc. Sec. & S'holder Deriv. Litig.*, 859 F. Supp. 2d 572, 578–579 (S.D.N.Y. 2012). That reasoning applies more strongly here. (Mot. 18.)[10]

The cases Plaintiffs cite are inapplicable. In *Alibaba Group Holding Ltd.*, disclosures attributing growth to merchant retention were misleading because defendants *actually misrepresented* their "ongoing" use of unlawful merchant "exclusivity practices" by describing them as "prior" practices. No. 20-cv-9568, 2023 WL 2601472, at *9 (S.D.N.Y. Mar. 22, 2023). And in *Signet Jewelers Ltd.*, defendants touted their own portfolio as "very strong" and "highly disciplined" despite knowing this was untrue. No. 16-cv-6728, 2018 WL 6167889, at *11–13 (S.D.N.Y. Nov. 26, 2018). Here, Defendants neither misrepresented nor understated the extent to which fake review practices were being used; they did not mention them at all. (Mot. 20.)[11]

### E. Category 5: Statements Describing the Risks that Tuya's Products May Receive Negative or Insufficiently Positive Reviews

In disclosing that its reputation and results could be harmed if it failed to "generate positive customer feedback and minimize negative feedback" from customers and end users (AC ¶ 132), Tuya "offered [no] assurances directly or indirectly about [] customers' marketing

---

[10] Plaintiffs also do not dispute that, like the *Missfresh* disclosures, the Category 4 statements do not "misleadingly suggest[]" that the relevant conduct "did not exist." 2023 WL 7289750, at *12 (S.D.N.Y. Nov. 6, 2023).

[11] Plaintiffs also argue that Defendants' distinction between Tuya's sales and marketing efforts and those of its customers did not matter because Tuya's business is "deeply integrated" with its customers' businesses, and some customers' products display a "Powered by Tuya" label. (Opp. 25 n.16.) But these disclosures did not offer assurances regarding customers' sales and marketing practices—much less imply customers' noninvolvement in fake review schemes—and, as explained *supra*, end users' potential association of Tuya with its customers is irrelevant to whether the Registration Statement contained misleading statements.

practices" (Mot. 19). Plaintiffs do not dispute this. Instead, the Opposition contends—wrongly—that the Court "already ruled that the risk disclosures are actionable." (Opp. 12.)

But the Order did not address whether the disclosure Plaintiffs challenge was misleading; instead, it considered whether other risk disclosures inoculated Defendants from liability by "warn[ing] of the exact risk that later materialized." (Order at 26.)[12] It held that they did not, concluding that Tuya warned of *different* risks from the one that transpired. (*Id.* at 27–29.)[13]

Plaintiffs also assert, without explanation, that Tuya's disclosure of the risk of negative feedback "suggested that [the Fake Review Scheme] was not occurring." (Opp. 13.)[14] Plaintiffs cite no case in which disclosure of one risk triggered a duty to disclose a different risk; the one case on which they rely is distinguishable. *See Davis*, 2020 WL 1877821, at *9 (statements that defendants were receiving positive customer reviews clearly conveyed that customers were *not* "expressing dissatisfaction with [the company's] products"). Here, Tuya's affirmative disclosure pursuant to Item 105 of a known material risk (*i.e.*, the risk of negative reviews) did not imply or state that customers were *not* involved in fake review schemes. *See Morgan Stanley Info. Fund*, 592 F.3d at 365–66 (finding SEC-required disclosure of "principal risks" did not trigger "duty to

---

[12] The two Second Circuit cases on which the Court primarily relied also addressed whether a defendant's risk disclosures "inoculate[d] them from Section 11 liability" (Order at 27)—not whether the disclosures were themselves misleading. *See Halperin v. eBanker USA.com*, 295 F.3d 352, 359 (2d Cir. 2002); *Hunt v. All. N. Am. Gov't Income Tr.*, 159 F.3d 723, 729 (2d Cir. 1998).

[13] Nor can the Opposition seriously contend that Tuya's risk disclosures were misleading because the risk had transpired. (Opp. 12, 13.) Here, Tuya did not mischaracterize the likelihood that the Fake Review Scheme would occur; Tuya's risk disclosures did not discuss the Fake Review Scheme at all.

[14] Plaintiffs fail to respond to the point that disclosure of one risk related to customer reviews would suggest "caution rather than confidence" regarding reviews generally (Mot. 20), other than by claiming that in *Missfresh*, the issuer made clear that other deficiencies might exist. But Tuya too warned that it might lose customers' business for unknown, unpredictable reasons. (RS at 33.)

disclose all material information on the same or related subjects").[15]

## II.    The Allegedly Omitted Information Was Unknowable as a General Matter

Judgment on the pleadings is independently appropriate because the information allegedly omitted from the Registration Statement was not knowable as a general matter. (*See* Mot. 20–24.) Plaintiffs do not challenge the Court's conclusion that they cannot recover if Tuya omitted information that was unknowable as a general matter. (Order at 21–22.) Instead, Plaintiffs offer various arguments that the Fake Review Scheme was knowable. All fail.

The Opposition claims Safety Detectives discovered "prior to the IPO" that "a material number of Tuya customers had *already* engaged in the Fake Review Scheme." (Opp. 15–16.) But this is not what the Amended Complaint alleges, and the Report itself merely discussed Amazon fake review schemes without identifying vendors or users. (Order at 4; AC ¶¶ 13, 78; *see generally* Report.) The Report is therefore another example of public reporting about Amazon fake review schemes.[16] The Amended Complaint also does not allege that the data underlying the Report implicated Tuya customers. In short, Plaintiffs nowhere allege that *anyone*, including Safety Detectives, discovered the Fake Review Scheme pre-IPO.

Plaintiffs cannot bridge the gap by pointing to Tuya's post-IPO disclosures that its customers were impacted by Amazon bans. Even if this supports an inference that some number of Tuya customers were using fake Amazon reviews pre-IPO, the bans do *not* support an inference that such customer behavior was knowable as a general matter pre-IPO. And even if

---

[15] Further, in *Davis*, defendants falsely characterized past product reviews, while Tuya disclosed the forward-looking importance of positive reviews and risk of negative reviews. Plaintiffs do not claim that positive reviews were not important to Tuya, or that negative reviews did not pose a risk.

[16] Plaintiffs claim the Court already concluded that Safety Detectives knew of the Fake Review Scheme before the IPO (Opp. 2), but the Order stated that the Fake Review Scheme was "knowable" to Safety Detectives on March 1, 2021 (Order at 23). Even if the Fake Review Scheme *were* known to Safety Detectives before the IPO, that would not render it knowable as a general matter. (*See* Mot. 24.; *see also* p.10, *infra*.)

Safety Detectives discovered the Fake Review Scheme through extraordinary, specialized efforts (which Tuya could not have replicated lawfully, if at all), this would not make the Fake Review Scheme knowable as a general matter. (Mot. 22.)

Plaintiffs mischaracterize Defendants' knowability argument as resting on whether Tuya "should" have known about the alleged Fake Review Scheme. (Opp. 15.) That is wrong. The point is that Tuya *could* not have known about it. Plaintiffs' attempts to distinguish *Wandel* and *Gutman* misconstrue those cases. (*Id.* 15–16.) In both, the risk of a COVID-19 pandemic was not known or knowable as a general matter pre-IPO, despite the virus's spread in China. *Gutman v. Lizhi*, 633 F. Supp. 3d 681, 688–91 (E.D.N.Y. 2022); *Wandel v. Gao*, 590 F. Supp. 3d 630, 641–43 (S.D.N.Y. 2022); *see also* Order at 22. If extensive reporting did not make the pandemic risk knowable as a general matter, *one* specialist organization's access to data as a result of a server breach could not render the Fake Review Scheme knowable as a general matter here.[17]

Finally, Plaintiffs fail to address the significant shift in law they seek. (Mot. 25.) If, as they argue, every issuer that makes industry-standard, generalized disclosures must uncover and disclose demonstrably unknown information—information that is not generally knowable and that concerns conduct in which the issuer has no involvement—the securities laws *would* require "clairvoyan[ce]." *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 543 (S.D.N.Y. 2015). The prospect of exposure for unknowable risks would lead, at best, to lengthy disclosures listing remote hypothetical risks and would make the U.S. public markets substantially less attractive.

## CONCLUSION

Defendants respectfully request judgment on the pleadings in their favor.

---

[17] Plaintiffs also falsely equate Tuya's disclosures regarding the Amazon bans with the leaked data Safety Detectives accessed. (Opp. 17.) That certain sellers were negatively affected after the publication of the Report does not mean that their conduct was revealed by the same data underlying the Report.

Dated: July 10, 2024                              Respectfully submitted,
New York, New York


DAVIS POLK & WARDWELL LLP           ROPES & GRAY LLP

*/s/ Edmund Polubinski*                      */s/ Gregg L. Weiner*

Edmund Polubinski                            Gregg L. Weiner
Marie Killmond                               Andrew S. Todres

450 Lexington Avenue                         1211 Avenue of the Americas
New York, New York 10017                     New York, New York 10036
Tel: (212) 450-4000                          Tel: (212) 596-9000
Email:  edmund.polubinski@davispolk.com      Email:  gregg.weiner@ropesgray.com
        marie.killmond@davispolk.com                 andrew.todres@ropesgray.com

Mari Grace Byrne                             *Attorneys for Defendants Morgan Stanley &*
901 15th St., NW                             *Co. LLC, BofA Securities, Inc., and China*
Washington, DC 20005                         *International Capital Corporation Hong*
Tel: (202) 962-7000                          *Kong Securities Limited*
Email: mari.grace@davispolk.com

Jonathan K. Chang
1600 El Camino Real
Menlo Park, CA 94025
Tel: (650) 752-2000
Email:  jonathan.chang@davispolk.com

*Attorneys for Defendants Tuya, Inc., Xueji*
*(Jerry) Wang, Liaohan (Leo) Chen, Yi (Alex)*
*Yang, Yao (Jessie) Liu, Scott Sandell, Carmen*
*Chang, Jeff Immelt, Qing Gao, and Jing Hong*

11